## NORTHERN PAC. R. CO. *v.* PETERSON.

*(Circuit Court of Appeals, Eighth Circuit.  June 20, 1892.)*

No. 52.

1. MASTER AND SERVANT—NEGLIGENCE OF VICE PRINCIPAL.
    The foreman of an extra gang of track repairers, whose sole duty it was to supervise the work of track repairing over some 18 or 20 miles of the roadbed of a railroad company, to hire the men necessary to do that work, and to direct the operations of the force so employed, is a vice principal, for whose negligence the railroad company is liable, where a workman in said gang was injured while under his orders.  *Railway Co.* v. *Ross*, 5 Sup. Ct. Rep. 184, 112 U. S. 377, construed; *Woods* v. *Lindvall*, 48 Fed. Rep. 62, 4 U. S. App. 49, followed.

2. FELLOW SERVANTS—WISCONSIN RULE IN FEDERAL COURTS.
    A workman, while acting under the orders of the foreman of a gang of track repairers, was injured in the state of Wisconsin.  *Held,* in accordance with the federal adjudications, the question involving the construction of no statute of the state, that the foreman was not a fellow servant, although the rule of law was otherwise in Wisconsin.

In Error to the Circuit Court of the United States for the District of Minnesota.

Action by Samuel Peterson against the Northern Pacific Railroad Company to recover damages for personal injuries. Verdict and judgment for plaintiff. Defendant brings error. Affirmed.

Statement by THAYER, District Judge:

The case disclosed by the record is as follows: The defendant in error, who was plaintiff in the lower court, recovered a judgment in the sum of $2,500 for injuries sustained while in the service of the Northern Pacific Railroad Company, in consequence of being thrown from a hand car on which he was riding. At the time of the accident the plaintiff had been working for about one month as an ordinary laborer, with an extra gang of track repairers on the defendant company's road between Little Canada and Old Superior, in the state of Wisconsin. The repairs then in progress extended over three sections, or about 18 or 20 miles of roadbed, and were in charge of a foreman by the name of Henry Holverson. The work being done consisted in putting in new ties where needed, and in lining up and surfacing the track. As foreman in charge of the work Holverson had full authority, as occasion required, both to hire and discharge the men composing the extra gang of track repairers. The force at the time of the accident, and usually, consisted of 13 persons besides the foreman, and it appears to have worked under the exclusive supervision and control of Holverson, who supplied the men with tools and materials, and directed where, when, and how all work undertaken by the extra gang should be done. Besides the extra gang of track repairers, there were three other regular crews of section men at work on the three sections over which Holverson's jurisdiction extended, and there is some testimony in the record tending to show that the regular crews were also, to some extent, subject to Holverson's orders. The men composing the extra gang were transported each day, with their tools and equipments, to and from their place of labor by two hand cars furnished by the defendant company. Holverson always accompanied and had command of the party on these trips, and usually took a position on the front car, so as to look out for obstructions ahead and to give orders when to stop. On one of these trips, as the party were returning to Superior from their day's labor, Holverson set the brake on the front hand car as it was rounding a sharp curve in a cut, to avoid overtaking a woman who appeared to him to be on a trestle some 60 or 70 yards ahead of the hand car. The two hand cars were running at the time at a rate of speed variously estimated at from 7 to 15 miles per hour, and were from 45 to 60 feet apart. A collision occurred almost instantaneously, in consequence of the sudden stoppage of the front hand car, by which that car was thrown violently from the track, and the plaintiff, who was riding thereon, was seriously injured. On the trial in the circuit court the plaintiff below contended, and the jury undoubtedly found, that the collision was due to the culpable negligence of Holverson in stopping the front hand car too suddenly, without giving any warning to the crew of the rear car. The defendant contended that the accident should be attributed to the fault of the crew on the rear car, in running too close to the front car, in violation of Holverson's express or-

ders; but the jury evidently discarded that view as not warranted by the evidence.

*Tilden R. Selmes,* for plaintiff in error.

The question in this case is, will this court adopt the doctrine that the mere matter of suoordination determines the liability of the employer; that whenever one employe is subject to the orders of another employe the negligence of the latter is the negligence of the employer?

Where it is once admitted that there are some servants who are fellow-servants, for whose negligence the employer is not responsible to another servant while in the line of their employment, then the only logical limitations are the ones adopted by New York, Massachusetts, and many other states, viz., that the master is responsible to his servant for the negligence of another servant in the performance of all such duties, and only such as the master is required to see are performed. The growth of business and the enlargement of enterprises has extended the master's duties, but they are all reducible to this rule. *Farwell* v. *Railroad Co.,* 4 Metc. (Mass.) 49.

After all the courts of this country had admitted that there was a doctrine of nonliability on the master's part for the act of a fellow servant, they found it impossible to logically make any different limitations than the one above referred to. For this reason many of the decisions announcing the superior servant doctrine are an *argumentum ad hominem,* or a mere statement that the superior was not a fellow servant; but, wherever the courts have attempted to extend the limitations of the doctrine with an argument, it is based on the logic of the *Farwell Case,* and will, upon an examination, be found to be based on the failure of the servant to use care in supplying tools or appliances. Some cases have held that the original rule was based on public policy, that public policy now requires a different rule, and therefore the fellow servant doctrine should be done away with, and in support of this cite the fact that several states have abolished the rule by act of the legislature. If public policy requires the changing of a principle of law established by a long line of decisions, it is the duty of the legislature to change it, and not the court; and the fact that some states have modified or abolished it by statute is rather an argument against the policy of a court changing the rule than in favor of it. The result which such action on the part of the court will produce is apparent in the present case. The decisions of Wisconsin, where this action arose, follow the Massachusetts doctrine, and Holverson would there be held to be a fellow servant with plaintiff. The legislature of Wisconsin, however, in 1889, thinking that the common-law rule should be changed, passed a statute (see *supra*) modifying the rule by making a railroad company responsible to an employe for damages caused by the negligence of any train dispatcher, telegraph operator, superintendent, yardmaster, conductor, or engineer, or of any other employe who has charge or control of any stationary signal, target, point, block, or switch. However, under the decisions of Wisconsin, the defendant would still not be liable to the plaintiff for the negligence of Holverson; but the plaintiff comes into this court, and asks that the laws of Wisconsin be amended so as to give him a cause of action. The statute may not be exclusive, or this court bound by the decisions of Wisconsin, but, if the doctrine of nonliability is to be modified on the ground of public policy, it is submitted the expression of the legislature of Wisconsin as to what that public policy in Wisconsin should be is entitled to consideration.

The *Ross Case (Railway Co.* v. *Ross,* 112 U. S. 377, 5 Sup. Ct. Rep. 184) seems to be the foundation of most of the efforts to break down the old-established doctrine on this question, as predicted it would be in the dissenting opinion. It has been cited as supporting the superior servant doctrine, and

as often denied. It did, however, hold that, under the facts established in that case, the conductor was the vice principal, and not a fellow servant of the engineer on a train; but that was all that was decided, and the court expressly limit its decision to the case before it, and decline to lay down the doctrine contended for by defendant in error in the present case. Those whose tendencies were in favor of the superior servant doctrine have, however, held that the decision sustained that principle. The duties of the conductor, as proved in that case, were the same as those of the train dispatcher or superintendent, and were duties that the master owed to the servant, (see *Lewis* v. *Seifert*, 116 Pa. St. 628, 11 Atl. Rep. 514;) but the duties of the conductor, as proved therein, were not such as his duties really are, and to that fact alone has been due much of the dissension this decision has caused. In *Coyne* v. *Railroad Co.*, 133 U. S. 370, 10 Sup. Ct. Rep. 382, the question of superior servant doctrine was one of the points in the case, but the court decided it on another, and in regard to that say: "These views being conclusive in favor of defendant, it is unnecessary to consider the broader grounds [that the foreman was a fellow servant] urged in support of the judgment below." This would tend to show that the supreme court did not consider that it had already committed itself to the superior servant doctrine by the *Ross Case.*

The *Ross Case* has been cited, interpreted, and applied in the following federal decisions: *Quinn* v. *Lighterage Co.*, 23 Fed. Rep. 363; *Garrahy* v. *Railroad Co.*, 25 Fed. Rep. 258; *Howard* v. *Railway Co.*, 26 Fed. Rep. 837; *Anderson* v. *Winston*, 31 Fed. Rep. 528; *Van Wickle* v. *Railway Co.*, 32 Fed. Rep. 278; *Easton* v. *Railway Co.*, Id. 893; *Van Avery* v. *Railroad Co.*, 35 Fed. Rep. 40; *Heckman* v. *Mackey*, Id. 353; *Hardy* v. *Railroad Co.*, 36 Fed. Rep. 657; *The Egyptian Monarch*, Id. 773; *Borgman* v. *Railway Co.*, 41 Fed. Rep. 667; *Ragsdale* v. *Railroad Co.*, 42 Fed. Rep. 383; *Railroad Co.* v. *Wilson*, (8th Circuit,) 48 Fed. Rep. 61; *Woods* v. *Lindvall*, Id. 73.

A few of the foregoing decisions support the superior servant doctrine, but the majority not only oppose it, but assert that the *Ross Case* does not in any sense either approve or support it.

The case of *Easton* v. *Railway Co.*, *supra*, holds that when an accident occurs in Texas the law of fellow servants, as decided by the Texas state courts, will control in the federal court. See, also, *Borgman* v. *Railway Co.*, *supra.* Also, in a late case in Ohio, (*Alexander* v. *Pennsylvania Co.*, 30 N. E. Rep. 69,) the supreme court of that state held that when the accident occurred in Pennsylvania, the man having been employed and working in Pennsylvania, they would apply the laws of Pennsylvania to the case. And the negligence complained of having been the negligence of a foreman for whose negligence in Ohio the defendant would have been liable, but, under the decisions of Pennsylvania the defendant not being liable, the Ohio court nonsuited the plaintiff.

*Railroad Co.* v. *Wilson*, above, and *Woods* v. *Lindvall*, have not necessarily committed this court to the superior servant doctrine. It was not necessary in either of those decisions for the court to so hold, nor did it. In the first case the track was improperly laid, owing to the negligence of the roadmaster, and this defect in the track caused the accident. In the second case the man in charge of building a trestle was negligent in the general plan of the work, and exposed the plaintiff to a danger that he did not know of and could not understand. In both cases the man whose negligence caused the accident had general charge of the mode and manner of doing the work, and the method and manner used was in itself defective. The court further held that in both cases the authority of the man in charge was of so general and extended a character that in that management and control he was representing the company, within the decision in the *Ross Case*, and that it is as

much the duty of the master to lay down proper rules and regulations for the management and conduct of his business as to furnish other safe instrumentalities or tools for performing the work.

*Henry J. Gjertsen* and *Lars M. Rand,* for defendant in error.

Before SANBORN, Circuit Judge, and SHIRAS and THAYER, District Judges.

THAYER, District Judge, after stating the case as above, delivered the opinion of the court.

The chief question in this case, and the only one which we deem it necessary to consider, is whether, on the state of facts disclosed by the record, Peterson, the plaintiff, and Holverson, the foreman, were fellow servants. The issue concerning the alleged negligence of the crew on the rear hand car was fairly presented by the charge of the lower court, and the jury have determined that issue adversely to the contention of the defendant company. It may be conceded that under the rule which prevails in Wisconsin, where the accident occurred, and in some other states as well, Peterson and Holverson would be regarded as fellow servants, notwithstanding the difference in their rank; and prior to the decision in. *Railway Co.* v. *Ross,* 112 U. S. 377, 5 Sup. Ct. Rep. 184, such would probably have been the conclusion reached by a majority of the federal courts, following in that respect what seems to have been the weight of authority before that case was decided. But as the question that we have to decide in the case at bar is one of general law, which does not involve any construction or interpretation of the statutes of the state of Wisconsin, we must determine it in accordance with federal adjudications and the principles enunciated in the *Ross Case,* as we understand and construe it. That case has sometimes been regarded as establishing no more than what has been termed the doctrine of "departmental control." In other words, it has been contended, with great plausibility and vigor, that the case merely decides that a person is a vice principal only when he has control of an important department of the master's service, and that within the meaning of the rule a conductor of a railway train has charge of a department, and is not a fellow servant of other employes of the master engaged in operating the same train. *Howard* v. *Railway Co.,* 26 Fed. Rep. 837.

But we think that it is hardly permissible to place such an arbitrary limitation upon the scope of that decision, in view of the reasoning on which the case rests, and the authorities cited in its support. Speaking for the majority of the court, Mr. Justice FIELD uses the following language:

"There is, in our judgment, a clear distinction to be made in their relation to their common principal between servants of a corporation exercising no supervision over others engaged with them in the same employment, and agents of the corporation clothed with the control and management of a distinct department, in which their duty is entirely that of direction and superintendence. A conductor, having the entire control and management of a railway train, occupies a very different position from the brakeman, the

porters, and other subordinates employed. He is in fact and should be treated as the personal representative of the corporation for whose negligence it is responsible to subordinate servants."

This we understand to be an explicit statement of a general rule by which to determine in any given case whether a person occupies the relation of a vice principal or a fellow servant. And the test applicable to the determination of that question is not whether the person has charge of an important department of the master's service, but whether his duties are exclusively those of supervision, direction, and control over a work undertaken by the master, and over subordinate employes engaged in such work whose duty it is to obey, and whether he has been vested by the common master with such power of supervision and management. The other view, that the question whether a person is a vice principal is to be determined solely by the magnitude or importance of the work that may have been committed to his charge, is open to the objection that it furnishes no practical or certain test by which to determine in a given case whether an employe has been vested with such departmental control, or has been "so lifted up in the grade and extent of his duties" as to constitute him the personal representative of the master. That this would frequently be a difficult and embarrassing question to decide, and that courts would differ widely in their views, if the doctrine of departmental control was adopted, is well illustrated by the case of *Borgman* v. *Railway Co.*, 41 Fed. Rep. 667, 669. We are of the opinion, therefore, that the nature and character of the respective duties devolved upon and performed by persons in the same common employment should in each instance determine whether they are or are not fellow servants, and that such relation should not be deemed to exist between two employes where the function of one is to exercise supervision and control over some work undertaken by the master which requires supervision, and over subordinate servants engaged in that work, and where the other is not vested by the master with any such power of direction or management. The views which we have thus expressed concerning the proper interpretation of the *Ross Case* were substantially stated by this court in the recent case of *Woods* v. *Lindvall*, 4 U. S. App. 49, and 48 Fed. Rep. 62. We believe that they are also in accord with the view generally entertained by other courts, and by the profession, concerning the scope and effect of that decision. Shear. & R. Neg. (4th Ed.) § 226.

On the trial in the circuit court there was no substantial controversy as to the relative functions of Peterson and Holverson. It was practically conceded that Holverson's sole duty was to supervise the work of track repairing over some 18 or 20 miles of the defendant's road, to hire the men necessary to do that work, and to direct the operations of the force so employed. He controlled the force engaged in that work as fully and effectually as any other agent or officer of the defendant company could have done. On the other hand, Peterson was an ordinary laborer, who had been employed by the foreman as a member of the extra gang of track repairers.

At the conclusion of the testimony the trial court charged the jury, with respect to the relation existing between the two employes, in the following language:

"Whether Holverson was a fellow servant of the plaintiff or not depends on the relation he sustained to the defendant company; and the court instructs you that if you find from the evidence that Holverson was a 'foreman of an extra gang' for the defendant company, and that as such foreman he had the charge and superintendence of putting in ties and lining and keeping in repair three sections of the defendant's road; that he hired the gang of hands, about thirteen in number, to do this work for the company, and had the exclusive charge and direction and management of said gang of hands in all matters connected with their employment, and was invested with authority to hire and discharge the hands to do said work at his discretion; and that plaintiff was one of the gang of hands so hired by Holverson; and that the plaintiff was subject to the authority of Holverson in all matters relating to his duties as a laborer,—then the plaintiff and Holverson were not fellow servants in the sense that will preclude the plaintiff from recovering from the railroad company damages for any injury he may have sustained through the negligence of Holverson, acting in the course of his employment as such foreman."

In view of what has already been said, we are unable to hold that the trial court erred in giving the foregoing instruction. We are equally unable to say that the court erred in refusing to direct the jury as a matter of law that Holverson and Peterson were in fact fellow servants. As these are the only substantial errors assigned, the judgment of the circuit court must be and it is hereby affirmed.