GOODWELL, RESPONDENT, *v.* THE MONTANA CEN-
TRAL RAILWAY COMPANY, APPELLANT.

[Submitted May 14, 1896.   Decided May 25, 1896.]

MASTER AND SERVANT—*Fellow servants—Negligence of foreman—Railroads.*—The
foreman or boss of a small extra gang of six men engaged in repairing the defend-
ant's railroad is not clothed with the control and management of a distinct depart-
ment, but of a mere separate piece of work in one of the branches of service in a de-
partment, and therefore, negligence of the foreman in not giving warning before
ordering the men to bear down on a rail which broke and injured the plaintiff, a
laborer in the gang, was not the neglect of a duty which the defendant company was
bound to perform, but was the negligence of a fellow servant for which the company
was not liable.

*Appeal from Second Judicial District, Silver Bow County.*

ACTION for damages for personal injuries.   The cause was
tried before MCHATTON, J.   Plaintiff had judgment below.
Reversed.

Statement of the case by the justice delivering the opinion.

This was an action brought by plaintiff against the defendant to recover damages from the defendant company, alleged to have been sustained on account of defendant's negligence. Plaintiff was a laborer in the service of the defendant when he was injured. The defendant denied the injury, and denied any negligence, and alleged that at the times mentioned in plaintiff's complaint its tools and appliances were in good order; and that, if plaintiff was injured at all, it was owing to his own neglect and want of care. The case was first tried in a justice of the peace court, and judgment rendered for plaintiff against the defendant for $298. It was appealed to the district court, where the following facts were brought out in evidence : The plaintiff was a laborer in an extra gang of about six men employed by the defendant company. McNulty was foreman of the gang, and hired plaintiff. On December 15, 1893, the men were raising the track called the "guard rail," and plaintiff was putting a block as a fulcrum in under the rail to lift the track with. The rail stuck in the block. When the foreman told the men to raise up the rail, they did so. Several of the men who were in the gang were at the further end of the rail, plaintiff being close down to the track, where the block was to be put in. The plaintiff got hold of the rail with both hands, and lifted it up under the rail in the track, and wanted to shove up the block with his foot to get a good lift. Finding the block would not move, he kicked it off, and then shoved it up tight, and put his hand down to straighten it. The block came up sideways, and while plaintiff was down in that position, and had the block partly straightened, and as he was about to raise up, the men came down on it, and the rail broke. The foreman had hold of the rail, and told the men to come down on it, and they did so. Plaintiff said he had no opportunity to get away after the foreman ordered the men to come down. He jerked his hand and foot as quickly as he could, but the rail fell on his foot, and hurt him, breaking the bones in his toe, and otherwise injuring his foot.

The court, among other things, charged the jury as follows: "You are instructed that if you find that the plaintiff was in-

jured through the carelessness of the foreman in giving orders when the plaintiff was in a dangerous position, and that the foreman did not act with ordinary care and prudence, then the plaintiff should recover against the defendant such damages as the evidence shows he has sustained.''

The following instructions were refused : ''The court instructs the jury that the rule of law is that a common employer is not responsible to a servant for an injury caused by the negligence or carelessness of a fellow servant of such servant engaged in the same line of employment; and in this case, if the jury believe from the evidence that at the time of the accident in question the plaintiff was in the employ of the defendant as a laborer engaged in repairing one of the defendant's tracks, and that while so employed, and in the line of his duty, he received an injury resulting from the negligence or carelessness of the foreman or boss superintending said work, then the court instructs the jury as a matter of law that the plaintiff and such foreman were fellow servants in the same grade or line of service within the meaning of the law, and the defendant would not be liable for such injury.

The court instructs the jury that if they believe from the evidence that plaintiff, together with other persons, were engaged in repairing or working upon the track of the defendant, and in the employ of the defendant, then they were fellow servants engaged in the same common employment. The fact that one of them had the control or command over the others, was the foreman or boss (if such was the fact), would not be sufficient to destroy such relation of fellow servants; and if the injury complained of herein, if any, was caused or brought about by the carelessness or negligence of such foreman or boss, still the defendant would not be liable therefor.''

The jury found a verdict for plaintiff in the sum of $200. The defendant moved for a new trial, assigning as error the giving of the instruction hereinbefore quoted, and the refusal to give the instructions above set forth. The motion for a new trial was overruled. Defendant appeals from the order overruling the motion for a new trial and from the judgment.

*H. G. McIntire* and *A. J. Shores*, for Appellant.

The jury were instructed that if at the time of the accident complained of the defendant's section foreman had employed plaintiff, and then and there had charge of him in and about the work being done, and the plaintiff was injured through the negligence of such foreman, and without negligence on his part, then he would be entitled to recover against the defendant. This instruction is obviously erroneous. The true test of whether co-employes are or are not fellow servants does not depend upon the grade or rank of service, nor upon whether the one had authority to control the actions of the other, but the controlling consideration is whether the act or omission is one arising from a duty owing by the master to the servant, the discharge of which duty is intrusted by the master to the negligent servant. (*Laning* v. *New York Central R. Co.*, 49 N. Y. 528; *Noyes* v. *Wood*, 36 Pac. 766; 2 Wood on Railroads, § 388; *Laughlin* v. *State*, 11 N. E. Rep. 371; *Hofnagle* v. *New York Central R. Co.*, 55 N. Y. 708; *Wright* v. *New York Central R. Co.*, 25 N. Y. 565; *New Pittsburg etc. Co.* v. *Peterson*, 35 N. E. Rep. 7; *Farwell* v. *Railroad Co.*, 4 Metc. (Mass.) 49; *Hogan* v. *Central Pacific Ry. Co.*, 49 Cal. 128. *McCosker* v. *Long Island R. Co.*, 84 N. Y. 77.) "*Prima facie*, all who enter into the employ of a single master are engaged in a common service, and are fellow servants, and some other line of demarcation than that of control must exist to destroy the relation of fellow servants." (*B. & O. Railroad Co.* v. *Baugh*, 149 U. S. 368.) The nature of the act or thing done, in the performance of which negligence is alleged, is the true criterion of the relation sustained by those employed by a common master to each other. (*New Pittsburg etc. Co.* v. *Peterson, supra, St. Louis etc. R. Co.* v. *Torrey*, 24 S. W. Rep. 244; *Larich* v. *Moies*, 28 Atl. Rep. 661; *Hoke* v. *St. Louis etc. R. Co.*, 11 Mo. App. 574; *Quinn* v. *New Jersey Lighterage Co.*, 23 Fed. 363; *Crispin* v. *Babbitt*, 81 N. Y. 516; *Easton* v. *Houston & T. C. R. Co.*, 32 Fed. 896.) It has been settled by nearly every court of last resort in the

United States that a master or employer is not responsible to those engaged in his employment for injuries suffered by them as the result of negligence, carelessness or misconduct of other servants in his employ, denominated fellow servants or co-employes, unless the employer himself is at fault. (Beach on Contributory Negligence, § 102; McKinney on Fellow Servants, § 9.)

HUNT, J.—This case presents for decision the question whether the foreman or boss of the small extra gang of about six men engaged in repairing the defendant's railroad. and the plaintiff, a laborer in the gang, were fellow servants of the railroad company, so as to preclude the plaintiff from recovering damages from the company for personal injuries caused by the negligence of the boss.

Since the decision of this court on the rehearing of the case of *Crisswell* v. *Railroad Co.*, *ante*, page 167, announcing that the statute of the territory of Montana, which modified the common law rule of the liability of a master to his employes for injuries to the latter by the negligence of a superior, was repealed by the adoption of the state constitution, the courts are obliged to determine questions such as the one now before us by the general law.

The supreme court of the United States regard the question as essentially one of general law. "It does not depend," says Justice Brewer in *Railroad Co.* v. *Baugh*, 149 U. S. 368, 13 Sup. Ct. 914, "upon any statute. It does not spring from any local usage or custom. There is in it no rule of property; but it rests upon those considerations of right and justice which have been gathered into the great body of the rules and principles known as the ' common law.' There is no question as to the power of the states to legislate and change the rules of the common law in this respect as in others; but, in the absence of such legislation, the question is one determinable only by the general principles of that law."

Reference must, therefore, always be had to the principles controlling the relations of the master towards his servant.

We should turn, too, to the decisions of learned courts which have applied those principles, and established precedents worthy to be regarded as authorities. But· in the considera-, tion of all such adjudged cases it is well to bear in mind that the varying applications of the rules of the law of negligence demand that each decision should be strictly regarded with relation to the exact facts before the court. The distinctions necessarily become highly important.

The familiar rule is that the servant entering the service assumes the ordinary risks of the employment entered into, which include the risk of injuries caused through a fellow servant's negligence. The recognition of this rule underlies the Ross case, 112 U. S. 377, 5 Sup. Ct. 184, and the many subsequent decisions of the federal supreme court. The difficulties have been in determining what is properly deemed a common employment. After consideration of the conduct of railroads and their ''vast and diversified'' business, it has been finally held that the principle that a master is liable to a servant who is injured through the master's failure of duty towards him is reasonably applied where of practical necessity, there are distinct and separate departments of service in the general conduct of the business, and where persons placed by the master in charge of any such departments or separate branches are given entire or absolute control therein, such persons, so far as employes under them are concerned, are vice·principals and representatives of the master. Such is the doctrine of the Ross case, *supra*, as interpreted and followed by the supreme court in late decisions.

But the application of the rule of the Ross case has been most cautiously restricted by the supreme court and their discussions of the meaning of the phrase, ''different branches or departments of service,'' demonstrate the care with which the learned justices now guard the line of separation between a fellow workman and a superintendent of a particular and separate department. ''It has ever been affirmed,'' they say in the Baugh case, ''that the employe assumes the ordinary risks incident to the service; and, as we have seen, it is as

obvious that there is risk from the negligence of one in imme-
diate control as from one simply a co-worker."

In *Railroad Co.* v. *Hambly*, 154 U. S. 349, 14 Sup. Ct.
983, the court, by Justice Brown, classify the decisions of the
leading state courts upon the fellow-servant doctrine, and
thus speak of the classes of cases involving the questions of
"subordination" of fellow-servants and "different depart-
ments": "Of both classes of cases, however, the same ob-
servation may be made, viz: that t ) hold the principal liable
whenever there are gradations of rank between the person re-
ceiving and the person causing the injury, or whenever they
are employed in different departments of the same general ser-
vice, would result in frittering away the whole doctrine of
fellow service. Cases arising between persons engaged to-
gether in the same identical service—as, for instance, between
brakemen of the same train, or two seamen of equal rank in
the same ship—are comparatively rare. In a large majority
of cases there is some distinction, either in respect to grade of
service or in the nature of their employments   Courts, how-
ever, have been reluctant to recognize these distinctions unless
the superiority of the person causing the injury was such as to
put him rather in the category of principal than of agent—as,
for example, the superintendent of a factory or railway,—and
the employments were so far different that, although paid by
the same master, the two servants were brought no further in
contact with each other than as if they had been employed by
different principals."

To these examples where the superior is deemed a principal
rather than an agent, may be added the superintendent of a
mine, as was decided in *Kelly* v. *Mining Co.*, 16 Mont. 484.

Adhering to the doctrine that mere superiority of position
is no ground of liability, the supreme court has recently been
called on to decide the precise question involved in this case.
In *Railroad Co.* v. *Peterson*, 16 Sup. Ct. 843, one Holverson
was foreman of an extra gang of men employed on a section
of the road to keep the same in repair. The duties of the
gang were to put new ties in where necessary, and to do work

of that general nature. The section gang worked under the foreman or boss. Holverson, as foreman, had the power to employ men and to discharge them. The company furnished the tools. Holverson always went with the men, and superintended their work. While the men were returning from work one day upon two hand-cars, Holverson, the foreman, negligently applied the brakes on the front car, and abruptly stopped it. He gave no warning of his intention, and the rear car ran into the one ahead, the result of which was that the first car was thrown from the track, and plaintiff was injured. He recovered damages. The court assume that Holverson had exclusive charge of the direction and management of the gang in all matters connected with their employment, and that the plaintiff was subject to the authority of Holverson in all matters relating to his duties as laborer. The circuit court of appeals held (51 Fed. 182) that the plaintiff and Holverson were not fellow servants, so as to preclude plaintiff recovering from the railroad company for injuries sustained through the negligence of Holverson, acting as such foreman. But the supreme court say that a foreman of such a gang is not a chief or superintendent of a separate and distinct department or branch of business of the company, as those terms are used where the company is made liable for the negligence of such officers. The Ross and Baugh cases are discussed, and the meaning of the expression ''departmental control,'' as applied to facts like those in the case before us, is construed to be correctly laid down in *Railroad Co.* v. *Hambly, supra,* where it was said: ''That a common day laborer in the employ of a railroad company, who, while working for the company under the orders and direction of a section boss or foreman on a culvert on the line of the company's road, receives an injury through the neglect of a conductor and an engineer in moving a particular passenger train upon the company's road, is a fellow servant of such engineer and of such conductor in such a sense as exempts the railroad company from liability for the injury so inflicted.'' The last case cited, and that of *Railroad Co.* v. *Keegan,* 160 U. S. 250, 16 Sup. Ct. 269, ''exclude,''

says Mr. Justice Peckham, ''by their facts and reasoning, the case of a section foreman from the position of a superintendent of a separate and distinct department.''

As directly applicable to the facts of the case before us, we quote as follows:    ''This boss of a small gang of 10 or 15 men, engaged in making repairs upon the road, wherever they might be necessary, over a distance of three sections, aiding and assisting the regular gang of workmen upon each section as occasion demanded, was not such a superintendent of a separate department, nor was he in control of such a distinct branch of the work of the master, as would be necessary to render the master liable to a co-employe for his neglect. He was in fact, as well as in law, a fellow workman.    He went with the gang to the place of work in the morning, stayed there with them during the day, superintended their work, giving directions in regard to it, and returned home with them in the evening, acting as a part of the crew of the hand-car upon which they rode.    The mere fact, if it be a fact, that he did not actually handle a shovel or a pick, is an unimportant matter.    Where more than one man is engaged in doing any particular work, it becomes almost a necessity that one should be boss and the other subordinate, but both are, nevertheless, fellow workmen.''

The court disapprove of the view of the circuit court of appeals ''that the nature and character of the respective duties performed by and devolved upon persons in the same common employment should in each instance determine whether they are or are not fellow servants, and that such relation should not be deemed to exist between two employes where the function of one is to exercise supervision and control over some work undertaken by the master which requires supervision, and over subordinate servants engaged in that work, and where the other is not vested by the master with any such power of direction or management.''

The facts of that particular case presented no difficulty by way of embarrassment, in determining the question of the line of separation between a fellow workman and a superintendent

of a particular and separate department, for, say the court, the foreman and the laborer in such a case are clearly fellow servants. That case is clearly decisive of this one. Here the neglect for which the plaintiff recovered was the neglect of McNulty, the foreman, in not exercising proper caution by warning the plaintiff and other men to look out before he ordered the men to bear down on the rail before it broke. Under the Baugh decision, the foreman, McNulty, was not "clothed with the control and management of a distinct department," but of a mere separate piece of work in one of the branches of service in a department. It was, therefore, "not a neglect of that character which would make the master responsible therefor, because it was not a neglect of a duty which the master owes, as a master, to a servant when he enters his employ." (*Peterson* v. *Railroad Co.*, *supra.*)

The Peterson case, just cited, was also approved of in *Railroad Co.* v. *Charless*, 16 Sup. Ct. 848, where the court refer to the general principles of the law of master and servant set forth in the Peterson case as controlling the case then under consideration.

It follows that the instructions of the court to the jury were erroneous. The court ought to have given the substance of those asked to be given by the defendant. For these errors the judgment must be reversed, and the case remanded, with directions to grant a new trial.

*Reversed.*

Pemberton, C. J., concurs.    De Witt, J., not sitting.