THURMAN, APPELLANT, *v.* PITTSBURG & MONTANA COPPER CO. ET AL., RESPONDENTS.

(No. 2,808.)

(Submitted April 5, 1910.   Decided April 18, 1910.)

[108 Pac. 588.]

*Personal ˙Injuries—Master and Servant—Mines—Pleadings— Statutory Actions—Variance—Creating Place to Work—Assumption of Risk—Fellow-servants.*

Personal Injuries—Pleading—Statutory Actions.
  1.   Where a servant relies for recovery for personal injuries on a special statute creating a liability on the part of the master where none existed before, he must set forth in ordinary and concise language a statement of facts showing his right to recover under that statute.

Same—Master and Servant—Pleading—Statutory Provisions.
  2.   Under Revised Codes, section 5248, declaring that every person operating a mine shall be liable for injuries to employees when caused by the negligence of any superintendent, foreman, shift-boss, etc., a complaint which charged defendant company and its foreman with

primary negligence in failing to use ordinary care to furnish plaintiff a safe place to work, and did not allege any specific acts of negligence on the part of the foreman imputable to the master, failed to state a cause of action falling within that section.

Same—Pleading and Proof—Variance—Nonsuit.

3. The plaintiff in a personal injury action may recover only upon proof establishing substantially the cause of action alleged; hence where the evidence tended to show an act of negligence other than the one relied on in the complaint, the court properly granted a nonsuit on the ground of variance.

Same—Mines—Shift-boss—Fellow-servant.

4. A shift-boss in a mine whose duty extends no further than to guide and direct the employees under him in the performance of the particular work in which he is engaged with them, is, under the common-law rule, a fellow-servant of his coemployees.

Same—Mines—Assumption of Risk.

5. Plaintiff, a miner, had been working in the place where he was injured for about seventeen days, and was familiar with the ground. After having been told by the shift-boss that the ground was safe and instructed to proceed with timbering, he left the workings to procure timbers and returned after an absence of over three hours. Without seeing whether the ground, after that lapse of time, was still safe, and omitting the usual precaution of putting up temporary lagging to protect himself, he proceeded to put in the timbers, and was injured by falling rock. *Held,* that he assumed the risk incident to working under such conditions, since the danger was open and obvious.

Same—Mining—Creating Place to Work—Assumption of Risk.

6. The rule that the master is bound to use ordinary care to furnish the servant a reasonably safe place in which to work has no application to a case where the latter's employment consists in creating the place of work, as in mining; any dangers arising from the work as it progresses or while making a dangerous place safe are assumed by the servant. After completion of the place, however, it is incumbent upon the master to keep it safe, and to that end to inspect and repair it from time to time.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

ACTION by Court Thurman against the Pittsburg and Montana Copper Company and another. From a judgment for defendants and from an order denying a new trial, plaintiff appeals. Affirmed.

For Appellant, there was a brief by *Messrs. Mackel & Meyer,* and oral argument by *Mr. Alex. Mackel.*

Even though the servant may be engaged in creating a place; even though hazards and risks may be constantly changing; or even though the servant may be engaged in "making a dan-

gerous place safe," the master must exercise ordinary care, and if he fails to do so, and the result of his failure in this respect. is injury to the servant, the master is liable. (*Cleveland etc. Co.* v. *Foland* (Ind. App.), 88 N. E. 787; *Bradley* v. *Chicago M. etc. Co.*, 138 Mo. 293, 39 S. W. 763; *Ward Co.* v. *Edison etc. Co.*, 124 App. Div. 22, 108 N. Y. Supp. 608; *Byrne* v. *Brooklyn City R. Co.*, 6 Misc. Rep. 441, 27 N. Y. Supp. 126; *Kohout* v. *Newman,* 96 Minn. 61, 104 N. W. 764; *Baird* v. *Reilly,* 92 Fed. 884, 35 C. C. A. 78; *Mather* v. *Rillston,* 156 U. S. 391, 15 Sup. Ct. 465, 39 L. Ed. 464.)   The following cases are almost "on all-fours" with the case at bar, and in each the defendant was held liable: *Superior C. & M. Co.* v. *Kaiser,* 229. Ill. 29, 120 Am. St. Rep. 233, 82 N. E. 239; *Sonnenberg* v. *Southern Pac. Co.*, 159 Fed. 884, 87 C. C. A. 64; *Western C. & M. Co.* v. *Ingraham,* 70 Fed. 219, 17 C. C. A. 71; *Hanley* v. *California etc. Co.,* 127 Cal. 232, 59 Pac. 577, 47 L. R. A. 597; *Millen* v. *Pacific Bridge Co.,* 51 Or. 538, 95 Pac. 196; *Consolidated Coal Co.* v. *Gruber,* 188 Ill. 584, 59 N. E. 254.

In the following cases the servant was held not to assume the risk: *Taylor* v. *Starr Coal Co.,* 110 Iowa, 40, 81 N. W. 249; *Haggerty* v. *H. G. Co.,* 89 Me. 118, 35 Atl. 1029; *McCoy* v. *Town of Westboro,* 172 Mass. 504, 52 N. E. 1064; *Garity* v. *B. B. & C. M. Co.,* 27 Utah, 534, 76 Pac. 556; *McCoy* v. *N. H. & E. Co.,* 104 Minn. 234, 116 N. W. 488; *Cons. Coal Co.* v. *Lundak,* 196 Ill. 594, 63 N. E. 1079.   Danger from work in an adjoining mine: *Williams* v. *Sleepy Hollow Min. Co.,* 37 Colo. 62, 7 L. R. A., n. s., 1170, 86 Pac. 337, 11 Ann. Cas. 111.   A higher duty of inspection rests on the employer than on the employee: *Baltimore & Ohio R. Co.* v. *Walker,* 41 Ind. App. 588, 84 N. E. 731; *Fitzsimmons* v. *City of Taunton,* 160 Mass. 223, 35 N. E. 549; *Pachko* v. *W. Coke & Coal Co.,* 46 Wash. 422, 90 Pac. 436; *Henrietta Coal Co.* v. *Campbell,* 211 Ill. 216, 71 N. E. 863.

The contention will probably be made that the failure to timber was the negligence of the previous shift; and that they were fellow-servants of the plaintiff.   On this subject, in ad--

dition to what is stated in *Allen* v. *Bell*, 32 Mont. 69, 79 Pac. 582, we invite attention to the case of *Shannon* v. *Consolidated T. & P. Min. Co.*, 24 Wash. 119, 64 Pac. 170, where it is held that the danger created by the off-going shift should be communicated to the on-going shift, and the failure to do so is the negligence of the master. See, also, the following: *Union Gold Min. Co.* v. *Crawford*, 29 Colo. 511, 69 Pac. 601, 22 Morr. Min. Rep. 213; *Czarecki* v. *Seattle etc. Co.*, 30 Wash. 288, 70 Pac. 750; *Tradewater Coal Co.* v. *Johnson*, 24 Ky. Law Rep. 1777, 72 S. W. 274, 61 L. R. A. 161; *Grant* v. *Varney*, 21 Colo. 329, 40 Pac. 771; *Cunningham* v. *Union Pac. Ry. Co.*, 4 Utah, 206, 7 Pac. 795.

"A servant has a right to rely upon the representations and assurances of the master, or his vice-principal, as to the absence of, or precaution against danger, unless the danger is obvious and imminent." (26 Cyc. 1185.) In the case at bar, when the master ordered the plaintiff into this place, told him to timber the same, and assured him that the place was safe, the plaintiff was not proceeding on his own judgment. He did not assume the risk of making a dangerous place safe, or the risk attendant upon creating a place, but he was justified in assuming that the master had exercised ordinary care to furnish him a reasonably safe place. Of course, if after that the servant changed the condition and this change of condition caused the injury, the master would not be liable. But such is not the situation in the case at bar. The duty of the servant to obey when he receives an order from the master has been so recently discussed by this court that we will not do more than to cite the cases. (*Schroder* v. *Montana Iron Works*, 38 Mont. 474, 100 Pac. 619; *Hardesty* v. *Largey Lumber Co.*, 34 Mont. 151, 86 Pac. 29.) Anticipating that the contention will be made that the plaintiff knew as much about the operation of drills, etc., we will say that assumption of risk is not predicable upon mere knowledge of conditions, but the circumstances must be such that no other inference than that he appreciated the danger is fairly deducible therefrom. (*Hollingsworth* v.

*Davis-Daly Estates C. Co.*, 38 Mont. 143, 99 Pac. 149; *Choctaw etc. Co. v. Jones*, 77 Ark. 367, 92 S. W. 244, 7 Ann. Cas. 430, 4 L. R. A., n. s., 838; *Galven v. Brown*, 53 Or. 598, 101 Pac. 677.) In view of the fact that the burden of proof of assumption of risk is on the defendants, no presumption arises in their favor, and looking at it from the most favorable standpoint of the defendants' side, this was a question for the jury. (*Hardesty v. Largey Lumber Co., supra.*)

*Messrs. Kremer, Sanders & Kremer* submitted a brief in behalf of Respondents. *Mr. Louis P. Sanders* argued the cause orally.

Where the complaint specifies negligence of a certain employee of defendant, recovery cannot be had on proof of other negligence of another employee. (*Thomas v. Louisville & N. R. Co.* (Ky.), 35 S. W. 910; *Howard v. C. & O. Ry. Co.* (Ky.), 90 S. W. 950.) In *Albrecht v. Milwaukee & S. Ry.*, 87 Wis. 105, 41 Am. St. Rep. 30, 58 N. W. 72, it is held that a complaint by a railroad servant against his employer under an Act substantially like that of Montana, for injuries caused by the negligence of any train dispatcher, telegraph operator, superintendent, etc., must specify to which of these classes the negligent person belonged. In the case at bar the negligence imputed to the defendant corporation was that of Ray, the foreman, and to no shift-boss or any other class. The negligence charged was specific and cannot be proved by any other negligence. (See *Forsell v. Pittsburgh & Montana Copper Co.*, 38 Mont. 403, 100 Pac. 218; *Ft. Wayne Iron & Steel Co. v. Parsell*, 168 Ind. 223, 79 N. E. 439.) The complaint must allege the negligence of the vice-principal and prove it as alleged. (*Collier v. Coggins*, 103 Ala. 281, 15 South. 578; *Campbell v. Wing*, 5 Tex. Civ. App. 431, 24 S. W. 360; *Atchison T. & S. F. R. Co. v. O'Neill*, 49 Kan. 367, 30 Pac. 470.)

It is elemental law that where the danger of the work is obvious, the servant assumes the risk, although the master assures

him that it is safe; hence, plaintiff cannot successfully contend that he may be absolved from all claims of contributory negligence or assumption of risk and recover on the strength of what Johnson, the shift-boss, told him. (*Perschke* v. *Hencken,* 44 N. Y. Supp. 265; *Rohrabacher* v. *Woodward,* 124 Mich. 125, 82 N. W. 797; *Showalter* v. *Fairbanks M. & Co.,* 88 Wis. 376, 60 N. W. 257; *Anderson* v. *Lumber Co.,* 47 Minn. 128, 49 N. W. 664; *Anderson* v. *Winston,* 31 Fed. 258; 20 Am. & Eng. Ency. of Law, 2d ed., 120.)

Such risks are assumed as should become apparent to the employee, or where his means of knowledge are equally as great as those of his employer. Where, considering the nature of his employment, he should not be reasonably expected to know such dangers, the rule is different, of course, and this vital difference is made clear in the case of *Hollingsworth* v. *Davis-Daly Co.,* 38 Mont. 143, 99 Pac. 149. (See Wood on Master and Servant, p. 791; *Fisk* v. *Central etc. Co.,* 72 Cal. 38, 1 Am. St. Rep. 22, 13 Pac. 144; *Garden City Wire Springs Co.* v. *Boecher,* 94 Ill. App. 96; *McCormick etc.* v. *Zakzewski,* 220 Ill. 522, 77 N. E. 147, 4 L. R. A., n. s., 848; *Mellott* v. *Louisville & N. R. Co.,* 101 Ky. 212, 40 S. W. 696; *Holt* v. *Chicago, M. & St. P. R. Co.,* 94 Wis. 596, 69 N. W. 352; *Weeklund* v. *S. O. Co.,* 20 Or. 591, 27 Pac. 260; *Jones* v. *Galveston etc. Ry. Co.,* 11 Tex. Civ. App. 39, 31 S. W. 706; *Morbach* v. *Home Min. Co.,* 53 Kan. 731, 37 Pac. 122; *Wormell* v. *Maine etc.,* 79 Me. 397, 1 Am. St. Rep. 353, 10 Atl. 49; *Jennings* v. *Tacoma etc. Co.,* 7 Wash. 275, 34 Pac. 937; *Stewart* v. *Seaboard Air Line Ry.,* 115 Ga. 624, 41 S. E. 981.) A master is not liable to a servant owing to the caving in of a bank which the servant was working, where the caving in was due to the action of the ground which was as apparent to the servant as to anyone. (*McQueeny* v. *Chicago M. & St. P. R. Co.,* 120 Iowa, 522, 94 N. W. 1124; *New Omaha etc.* v. *Rombold,* 68 Neb. 54, 97 N. W. 1030; *Watts* v. *Hart,* 7 Wash. 178, 34 Pac. 423.)

Appreciation of risk is to be determined from the standpoint of what the party knew or should have known, and when it

appears he knew or should have known of the conditions—always keeping in mind the character of his duties—then as it is declared by Dresser in his work on Employers' Liability, 539, and the decisions, the law will say he must have appreciated the danger.  The following cases define the meaning of the term "appreciation" of dangers: *Davis* v. *Forbes*, 171 Mass. 548, 51 N. E. 20, 47 L. R. A. 170; *Island Coal Co.* v. *Greenwood*, 151 Ind. 476, 50 N. E. 36; *Galland* v. *Great Northern Ry. Co.*, 101 Minn. 540, 111 N. W. 1133; *Poorman Silver Mines* v. *Devling*, 34 Colo. 37, 81 Pac. 252; *Purkey* v. *Southern Coal & T. Co.*, 57 W. Va. 595, 50 S. E. 755; *Fort Worth Iron Works* v. *Stokes*, 33 Tex. Civ. 218, 76 S. W. 231.  The rule applicable here is the one declared in *Shaw* v. *New Year's Gold Mines Co.*, 31 Mont. 138, 77 Pac. 515, that where the servant, in an employment such as mining, is making the place in which he works and constantly changing the conditions as regards increase or diminution of safety, he assumes the risks of the ordinary dangers of his employment.  (*Finlayson* v. *Utica Min. Co.*, 67 Fed. 507, 14 C. C. A. 412; *Petaja* v. *Aurora Iron Min. Co.*, 106 Mich. 463, 58 Am. St. Rep. 505, 64 N. W. 335, 32 L. R. A. 435; *Davis* v. *Trade Dollar*, 117 Fed. 122, 54 C. C. A. 636; *Maloney* v. *F. & C. C. R. Co.*, 39 Colo. 384, 121 Am. St. Rep. 180, 89 Pac. 649, 12 Ann. Cas. 621, 19 L. R. A., n. s., 348; *Florence & C. C. R. Co.* v. *Whipps*, 138 Fed. 13, 70 C. C. A. 443; *Jennings* v. *Ingle*, 35 Ind. App. 153, 73 N. E. 945; *Richardson* v. *Anglo American Prov. Co.*, 72 Ill. App. 77; *Armour* v. *Hahn*, 111 U. S. 313, 4 Sup. Ct. 433, 28 L. Ed. 440; *Armour & Co.* v. *Dumas*, 43 Tex. Civ. 36, 95 S. W. 710; *Fournier* v. *Pike*, 128 Fed. 991; *Anderson* v. *Daly Min. Co.*, 16 Utah, 28, 50 Pac. 815; *Consolidated Coal & Min. Co.* v. *Floyd*, 51 Ohio St. 542, 38 N. E. 610, 25 L. R. A. 848; *Oleson* v. *Maple G. C. & Min. Co.*, 115 Iowa, 74, 87 N. W. 736; *Mielke* v. *Chicago & N. W. R. Co.*, 103 Wis. 1, 74 Am. St. Rep. 834, 79 N. W. 22; *Di Vito* v. *Crage*, 165 N. Y. 378, 59 N. E. 141; *Kellyville Coal Co.* v. *Bruzas*, 223 Ill. 595, 79 N. E. 309.),

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought by plaintiff to recover damages for personal injuries received by him during the course of his employment by the defendant corporation in its mine in Silver Bow county, and while working under the direction of the defendant Ray, its foreman. The complaint alleges with much detail the circumstances surrounding the accident. It states substantially the following: That during the month of May, 1907, the plaintiff was in the employ of the defendant company as a machine man, competent to operate a compressed-air drill; that he was directed to work at a place in the mine, a particular description of which he cannot give, which had not been timbered; that it was the duty of the defendants to furnish timbermen to timber such places as had been excavated during the progress of the work, and, when the timbermen failed to do the required timbering, to require the shifts of men who had made the excavations to timber them; that the defendants had failed to furnish timbermen and had failed to require the outgoing shift to timber the said place, and thus failed to exercise ordinary care to furnish plaintiff a reasonably safe place in which to work; that the ground at the point where the plaintiff was directed to work was unstable and likely to cave and fall, from slacking upon exposure to the air, if jarred or shaken to the slightest extent; that, notwithstanding this fact, the defendants caused to be operated at various points on the same level upon which plaintiff was working several large compressed-air drills in such close proximity to plaintiff that the blows struck by them against the walls of the mine shook and jarred the ground for a considerable space adjacent thereto, and particularly at the place where the plaintiff was working; that it was exceedingly dangerous to work at that place after an excavation had been made and before it had been properly timbered, and the danger was increased by the operation of the drills, a fact not known to the plaintiff, but well known to the defendants; that the defendants carelessly and negli-

gently directed plaintiff to work in the said place, and that, while he was so engaged at work "and because of the careless-ness and negligence complained of," a piece of rock became loose and fell upon his back, causing the injury.   It proceeds: "That at the said time plaintiff was acting within the scope of his employment, and acting and working under the orders and directions of the defendants herein, and that at the time he was so injured, he was setting up and preparing his said drill, and getting the same ready and in position, preparatory to drilling holes in the wall at the place wherein plaintiff was at the said time employed, and that all of the things which plaintiff was at the said time doing and performing was a part of plaintiff's employment, and he was acting in the discharge of the duties of, and within the scope of, his employment when he was so injured."   Then follow allegations detailing the char-acter of the injury and plaintiff's resulting disability, with demand for judgment.   General and special demurrers, inter-posed by the defendants, having been overruled, they answered, denying all the material allegations of the complaint, and alleging the usual defenses of contributory negligence, assump-tion of risk, and that the injury was caused by the negligence of a fellow-servant of plaintiff.   At the close of plaintiff's case the defendants each moved for a nonsuit, upon the grounds, among others, that the evidence fails to show that either of them was guilty of the negligence alleged in the complaint, and hence that there is a fatal variance between the allegations contained in the complaint and the evidence adduced in sup-port thereof, and that it affirmatively appears that the plaintiff assumed the risk.   The motion for nonsuit was sustained and judgment ordered for defendants.   From the judgment and an order denying his motion for a new trial the plaintiff has ap-pealed.

Though counsel make three assignments of error, they all present the same question, to-wit: Did the court err in granting the motion for nonsuit?   Before entering upon the examina-tion of the evidence, we shall consider briefly the theory of the

action adopted by counsel for plaintiff, as shown by the allegations contained in the complaint.

Section 5248, Revised Codes, declares: "That every company, corporation, or individual operating any mine, smelter or mill for the refining of ores shall be liable for any damages sustained by any employees thereof within this state, without contributing negligence on his part, when such damage is caused by the negligence of any superintendent, foreman, shift-boss, hoisting or other engineer or cranemen." The purpose and effect of this provision is to declare who among the agents and employees of the owner of a mine, or mill, or smelter, are to be deemed vice-principals for whose negligence the owner may be held liable to other employees, upon the principle embodied in the maxim, *"respondeat superior"*; in other words, to classify the employees by declaring who among them are vice-principals. In so far as it puts into that class employees who under the common-law rule were held to be fellow-servants because engaged with other employees in a common employment for a common purpose, it modifies the common-law rule that the master is not liable for injuries caused to an employee by the negligence of a fellow-servant. It creates a liability where none existed before its enactment by taking away a defense which was theretofore available to the master. In *Kelly* v. *Northern Pacific Ry. Co.*, 35 Mont. 243, 88 Pac. 1009, this court discussed provisions of a statute having the same purpose and effect with reference to persons and corporations engaged in operating railways. (Revised Codes, sec. 5251.) The cases in which were involved and determined questions touching the form of pleading, which must be adopted in order to state a cause of action under similar provisions, were examined. Following what we deemed the best reasoning upon the subject, the court, through Mr. Justice Smith, said: "In order to settle the rule in this state, we decide that, where a party relies for recovery upon a special statute creating a liability where none existed before, he must set forth in ordinary and concise language a statement of facts showing his right to recover under that statute."

· Testing the complaint in this case by this rule, it falls far short of stating a cause of action under the statute. The defendants are charged jointly with primary negligence. Arranging the allegations in logical order, the substance of the charge is that the ground where the plaintiff was occupied was soft and likely to cave and fall because of slacking when exposed to the air; that the danger was increased by concussion produced by the drills; that this fact was known to defendants, and not to plaintiff; that it was the duty of the defendants to furnish timbermen to timber the ground in order that it be properly supported; that defendants failed to do this; that they carelessly and negligently ordered him to work in the excavation before it was timbered, and that because of this negligence, while he was engaged in setting up his machine, a piece of rock fell upon him, inflicting the injury complained of. As observed by Mr. Justice Smith, in the *Kelly Case, supra,* in adopting the form he did in charging the negligence upon which is predicated the right to recover, the plaintiff lost sight of the distinction between the acts of the corporation, which, though done by an agent, are yet primarily the acts of the corporation, and those for which it may be held liable upon the principle of the maxim, *respondeat superior.*" The complaint does not invoke the principle of *respondeat superior* upon which the statute is based, but counts exclusively upon the violation, by both of defendants, of their common-law duty to use ordinary care to furnish the plaintiff with a reasonably safe place in which to do his work. It does not allege any specific act of negligence by Ray, the foreman, which it imputes to the corporation. We must therefore examine the evidence with a view of determining whether it tends to support the cause of action thus stated.

The facts established by the evidence are these: The plaintiff was employed as a machineman, but he was engaged with others in excavating a drift or tunnel on the 800-foot level of the defendant company's mine. His duties included drilling, blasting, and, when the conditions required it, he had to do or to assist in doing the timbering necessary to furnish support to the ground as the excavation progressed. As soon as the excava-

tion at any time progressed far enough to permit the putting
in of a set of timbers, the miners on duty were required to put
it in.   If they failed to put it in, or if the men on any shift on
duty neglected to timber as soon as the excavation had pro-
gressed far enough, it was customary for the shift boss to stop·
the work of excavation, and direct them to put in the timbers.
The last set had been put in by the plaintiff and another miner
who was on shift with him.   When they went off shift, the ex-
cavation had progressed nearly to the point at which another
set of timbers was required.   When they returned at the usual
time on the next day to resume work, no additional timbering
had been done, but the excavation had progressed nearly far
enough to require two sets.   These sets were six feet in length.
When plaintiff went off shift, no timbers had been provided.
There were none when he returned.   The first thing plaintiff
did upon his return was to make an examination of the ground
to ascertain if it was safe, and in doing so he picked down any
portions of rock that he found loose or likely to fall.   While·
he was so engaged, one Johnson, the shift-boss, came by, and,
having looked over the place, said: ''That's all right.   Go·
ahead and put in the timbers.''   He also used the words: ''That.
ground is all right.''   The plaintiff then, having examined the·
ground and being satisfied from his examination and the state-
ments of the shift-boss that it was safe, went out to the shaft.
to obtain timbers.   He did not return until some time later; or,
as he himself states, until after the lapse of three and one-half
hours.   He was waiting for the timbers to be brought down
from the surface.   Whether it was his duty to go to the surface·
for them does not appear.   It does appear that he waited at.
the shaft until timbers were sent down.   Having secured them,
he returned, and assisted by his companion, proceeded to put
them in without further examination, however, to ascertain if
the ground was still safe.   While in a stooping position remov-
ing some material from the place where he intended to set a
timber, a piece of rock fell upon him from the roof of the·
excavation, and inflicted the injury complained of.   It was cus-

tomary for the miners in timbering to protect themselves by putting temporary lagging overhead to prevent the fall of rock: from above. During the absence of the plaintiff drilling was in progress in the vicinity of the excavation, but none of the witnesses state definitely whether the concussion produced was. sufficient to affect the stability of the ground in the excavation,. though the jar was perceptible for some distance in any direction from the places where the drills were in operation. The ground in the vicinity, other than that in the excavation in which the plaintiff was at work, did not generally require timbering.

It thus appears that at the time he was injured the plaintiff was not engaged in setting up his machine under the direction of the defendants, or either of them. He was engaged in making the place safe, so that he and his associates might be protected from the very peril from which he suffered the injury. His complaint is that the defendants failed to furnish timbermen to timber the place, and that he was directed to work there without knowledge of the conditions which actually existed; whereas, if it be assumed that Johnson was at the time acting in the capacity of vice-principal, the negligence which the evidence tends to show is that the plaintiff by reason of the assurance given him by Johnson that the ground was safe, neglected to take the precautions for his own safety which he otherwise would have taken; in other words, he was, through the negligence of Johnson, induced to go into a place of danger, when otherwise he would not have done so. Thus it appears that the evidence does not in any way tend to support the cause of action alleged. In personal injury actions, as in all others, the plaintiff may recover only upon proof establishing substantially the cause of action alleged. (*Flaherty* v. *Butte Electric Ry. Co.*, 40 Mont. 454, 107 Pac. 416.) Hence the motion for nonsuit was properly granted on the ground of variance. In referring to the language used by Johnson, the shift-boss, we use the term "assurance." We do so in order to give it the construction

most favorable to the plaintiff.  To say the least, it is doubtful whether it is susceptible of this construction.

The motion was also properly granted on the ground that the plaintiff assumed the risk.  The evidence does not tend to show what the duties of Johnson were.  The witnesses refer to him merely as "shift-boss."  This court has heretofore held that under the common-law rule a laborer employed by and acting under the orders of a section foreman of a railroad is a fellow-servant of the foreman, and also of the engineer and foreman of a yard engine, and that he cannot recover for injuries suffered through their negligence.  (*Goodwell* v. *Montana Central Ry. Co.*, 18 Mont. 293, 45 Pac. 210; *Hastings* v. *Montana Union Ry. Co.*, 18 Mont. 493, 46 Pac. 264; *Mulligan* v. *Montana Union Ry. Co.*, 19 Mont. 135, 47 Pac. 795.)  The same rule applies to a shift-boss in a mine, whose authority over his associates extends no further than to guide and direct them in the performance of the particular work in which he is engaged with them.  (*Allen* v. *Bell*, 32 Mont. 69, 79 Pac. 582.)  The only purpose of the legislature in enacting the Code provision, *supra*, was to work a change in this rule.  If, in fact, Johnson was engaged in the performance of duties which could not be delegated by the company, he was a vice-principal; otherwise he was a mere fellow-servant of plaintiff, and any negligence of which he was guilty could not be imputed to the company.  Under the view we have taken of the case, however, the plaintiff cannot recover even if it be conceded that Johnson was a vice-principal.

The plaintiff, as a reasonable man, must have known of the existing conditions.  He had been working there for seventeen and one-half days—not as a machineman, as he alleges, but as a miner.  His duties required him not only to make the place, but also to make it safe by timbering as the work of excavation progressed.  When the shift-boss came to him, he was engaged in testing the ground to ascertain if it was safe.  Having been directed to proceed with the timbering, with the assurance that the ground was then safe and having tested it further, he went to procure the timbers.  He was away about three and one-half

hours.   In the meantime the drilling had been in progress, and
the slacking process had been going on.   If he had gone into
the place at once and engaged in the work of timbering, he
might with some propriety have claimed that he had relied upon
the assurance of Johnson that the place was safe; but after the
lapse of time during which he was absent—and it does not ap-
pear that the defendants were in any way to blame for this loss
of time or even knew of it—he, as a reasonable man, with
knowledge of the changing conditions, had no right to rely upon
the assurance; for, at most, it was made with reference to the
conditions as they existed at that time, and did not include
conditions as they would exist in the future.   Upon his return
he went into the place, and, without taking the precautions to
make further tests and omitting the precaution, usually taken,
of putting up temporary lagging to protect himself, went to
work to put in the timbers.   The perils were open and obvious,
and, as he chose to encounter them without exercising that de-
gree of care and circumspection which the law requires of every
reasonable man placed in like circumstances, he assumed the
risk, and must be held responsible for his own injury.   Under
the rule recognized by this court, the defendants were entitled
to a nonsuit on this ground.   (*Longpre* v. *Big Blackfoot Mill-
ing Co.*, 38 Mont. 99, 99 Pac. 131.)

Again, while under the general rule it is the duty of the
master to use ordinary care to furnish the servant a reasonably
safe place in which to work, and while this duty cannot be
delegated to others so as to free the master from liability (26
Cyc. 1321), in mining and similar industries, one of the neces-
sary incidents of the employment of the servant is the making
of the place in which he works.   The conduct of industries of
this character is dependent upon the doing of work which itself
brings about the dangers to which the servant is exposed from
time to time as it progresses.   Either the master must himself
do the work and personally assume all the attendant risk, or
he must employ someone else to do it.   Therefore the neces-
sity of the case requires the servant, when he enters such

employment, to assume the risk of the same dangers, and this assumption on his part is an incident of the contract. (*Shaw* v. *New Year's Gold Mines Co.*, 31 Mont. 138, 77 Pac. 515.) On this subject Mr. Labatt says: ''The rule that it is the duty of a master to exercise ordinary care to provide a reasonably safe place of work for his servants is held not to be applicable to cases in which the very work which the servants are employed to do is of such a nature that its progress is constantly changing the conditions as regards an increase or diminution of safety. The hazards thus arising as the work proceeds are regarded as being the ordinary dangers of the employment, and by his acceptance of the employment the servant necessarily assumes them. (Labatt on Master and Servant, sec. 269.) In the case of *Finlayson* v. *Utica Mining & Milling Co.*, 67 Fed. 507, 14 C. C. A. 492, wherein the facts are somewhat similar to those before us, Judge Sanborn, speaking for the court, said: ''But this rule cannot be justly applied to cases in which the very work the servants are employed to do consists in making a dangerous place safe, or in constantly changing the character of the place for safety as the work progresses. The duty of the master does not extend to keeping such a place safe at every moment of time as the work progresses. The servant assumes the ordinary risks and dangers of his employment that are known to him, and those that might be known to him by the exercise of ordinary care and foresight. When he engages in the work of making a place that is known to be dangerous safe, or in a work that in its progress necessarily changes the character for safety of the place in which it is performed as the work progresses, the hazard of the dangerous place and the increased hazard of the place made dangerous by the work are the ordinary and known dangers of such a place, and by his acceptance of the employment the servant necessarily assumes them." After the place has been completed, however, it becomes the duty of the master to use ordinary care to keep it safe, and, under the application of the general rule, he must perform the duty of inspection and repair, from time to time,

to preserve that condition, and he is liable for any injury suffered by his servant through any negligence of duty in that behalf. Illustrative applications of this rule are found in *Kelley* v. *Fourth of July Min. Co.*, 16 Mont. 484, 41 Pac. 273, and *Union Pacific Ry. Co.* v. *Jarvi*, 53 Fed. 65, 3 C. C. A. 433. If, for instance, the employees are engaged in driving a tunnel which requires timbering as it progresses, the risk of the dangers incident to the work as it progresses is assumed by the employees, after the master has discharged the duty of furnishing suitable appliances and materials for the work. Nevertheless the duty to inspect and make repairs in the completed portion appertains exclusively to the master. If Johnson be regarded a mere fellow-servant, and the statement made by him to the plaintiff be construed as the usual direction given to the employees, when occasion required, to proceed with the timbering, then, under the rule as declared in the cases cited above, the injury was the result of one of the ordinary hazards of the business which the plaintiff assumed as an incident to his contract of employment. .

So far we have made no reference to the alleged connection of foreman Ray with the accident. The evidence fails entirely to connect him with it in any way. He was not present at the time. The shift-boss was not in his employ, but in that of the company. No négligence of which the shift-boss may have been guilty is properly imputable to him; for he was merely an intermediate agent who could not be held responsible except for the omission of some duty with which he himself was personally charged.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.