McALLISTER, Appellant, v. ROCKY FORK COAL CO., Respondent.

(No. 3,107.)

(Submitted April 9, 1912.   Decided April 20, 1912.)

[123 Pac. 696.]

*Personal Injuries—Coal Mines—Master and Servant—Fellow-servants—Vice-principal—Unsafe Appliances—Duty of Master—Simple Tools—Inspection—Nonsuit—Presumptions.*

Nonsuit—Evidence of Plaintiff—Presumptions.

1.   In determining a motion for nonsuit, plaintiff is entitled to have his evidence considered in the light most favorable to him and as establishing every material fact which it tends to prove.

Personal Injuries—Master and Servant—Fellow-servants—Vice-principal—Duties of.

2.   Whether an employee is a vice-principal or a fellow-servant depends, not upon the rank or grade he occupies among his associates, but upon the character of service he is required to perform; he is a vice-principal if for the time being he is the agent upon whom the employer has cast responsibility for the performance of nondelegable duties, and where he is the controlling authority, he is charged with the performance of all the duties of the employer relative to providing a reasonably safe place, reasonably safe and suitable appliances and materials, and reasonably competent fellow-servants.

Same—Vice-principal—Presumptions.

3.   When the conditions are such as to make it applicable, the presumption obtains, in the case of a vice-principal as in that where the master himself is concerned, that he had knowledge of them; notice to the former is notice to the latter.

Same—Defective Appliances—Notice—Evidence—Sufficiency.

4.   Evidence in an action for personal injuries to a coal miner alleged to have been caused by reason of a defective pump-jack used in connection with a machine employed in mining coal, *held*, sufficient to warrant the inferences that defendant knew of the defective condition of the appliance but failed to advise plaintiff of the danger incident to its use while in such condition, and that plaintiff was ignorant of its faulty state and could not know of it from such an examination as he was able to give it before he attempted to use it.

Same—Appliances—Examination—Duty of Servant.

5.   When ordered to perform a certain task, it was incumbent upon plaintiff to yield instant obedience and not consume time in making tests, examinations and experiments in order to ascertain whether an appliance, alleged to have been faulty, was suitable and safe; he was only obliged to make such observation as the circumstances permitted in order to discover patent, obvious defects.

Same—Simple Appliance—Liability for Defect in.

6.   While, where an appliance furnished an employee is a simple one, and a defect in it is apparent or readily ascertainable by ordinary observation in the exercise of ordinary care, such employee will assume

45 Mont.—28

the risk of injury resulting from its use, an employer who has actual knowledge of a defect in such an appliance which is not obvious but can only be discovered by manipulations or tests which plaintiff had not the time to make, is not relieved from liability because of the simple character of the tool.

*Appeal from District Court, Carbon County; Sydney Fox, Judge.*

Action by James H. McAllister against the Rocky Fork Coal Company of Montana. From a judgment upon an order sustaining defendant's motion for nonsuit, plaintiff appeals. Reversed and remanded.

*Messrs. Walsh & Nolan,* for Appellant, submitted a brief; *Mr. Nolan* argued the cause orally.

*Messrs. Gunn & Rasch,* and *Mr. E. M. Hall,* for Respondent, submitted a brief; *Mr. Hall* argued the cause orally.

Feeley, the foreman, and plaintiff, were fellow-servants; therefore, the knowledge of Feeley that the jack was defective is not chargeable to the defendant company. "The knowledge of an employee who was a mere coservant of the injured person is not chargeable to the master. In other words, the master will not be regarded as negligent in not knowing of a defect which is not known to any officer or agent for whose negligence the master would be responsible." (Labatt on Master and Servant, sec. 149; *Bauer* v. *American Car etc. Co.,* 132 Mich. 537, 94 N. W. 9; *McKenna* v. *Martin,* 176 Pa. 306, 35 Atl. 131; *Smoot* v. *Mobile etc. Ry. Co.,* 67 Ala. 13; *Brown* v. *Hershey Land Co.,* 65 Mo. App. 162; *Richardson* v. *Cooper,* 88 Ill. 270.) But whether the defendant had actual knowledge that the cogs on the jack were worn, or by the exercise of ordinary care should have known it, and therefore had constructive knowledge, is immaterial in this case. We concede that plaintiff's evidence shows that the cogs were worn so as to permit the lifting bar to slip at times, especially with a heavy weight on it, and that this condition might have been discovered by an ordinary inspection of the jack. However, "an essential ingredient in any

conception of negligence is that it involves the violation of a legal duty which one person owes to another, the duty to take care for the safety of the person or property of the other; and the converse proposition is that, where there is no legal duty to exercise care, there can be no actionable negligence." (Thompson on Negligence, sec. 3.)

There was no legal duty owing by defendant in this case, because the jack-screw is a common tool or appliance, like a jack-plane, monkey-wrench, canthook or vise, not involving any element of danger in itself, and plaintiff was an experienced coal miner, familiar with the handling of jack-screws, and as competent to judge of their condition as the defendant, or any person it might employ for that purpose. (*Longpre* v. *Big Blackfoot Milling Co.,* 38 Mont. 99, 99 Pac. 131; *Masich* v. *American Smelting & Refining Co.* (Mont.), 118 Pac. 764.) In *Bowen* v. *Chicago Northwestern Ry. Co.,* 117 Ill. App. 9, a jack-screw was held to be a simple tool. In *Lukovski* v. *Michigan Central R. Co.,* 164 Mich. 361, 129 N. W. 707, a bucket, used in a coal mine, was held a simple tool or appliance. The following have been held simple appliances or common tools, which the servant assumed the risk of using, and the master owes no duty to inspect: A hook for moving timbers in a sawmill. (*Longpre* v. *Blackfoot Milling Co.,* 38 Mont. 99, 99 Pac. 131; *Olson* v. *Doherty Lumber Co.,* 102 Wis. 264, 78 N. W. 572.) A pinchbar. (*Holt* v. *Chicago etc. Ry. Co.,* 94 Wis. 596, 69 N. W. 352.) A ladder. (*Corcoran* v. *Milwaukee Gas Light Co.,* 81 Wis. 191, 51 N. W. 328; *Dessecker* v. *Phoenix Mills Co.,* 98 Minn. 439, 108 N. W. 516.) A sewing-machine belt, consisting of several parts fastened with hooks. (*Nelson-Bethel Clothing Co.* v. *Pitts,* 131 Ky. 65, 23 L. R. A., N. S., 1013, 114 S. W. 331.) A wagon. (*Tallman* v. *Nelson,* 141 Mo. App. 478, 125 S. W. 1181.) A wrench. (*Garnett* v. *Phoenix Bridge Co.,* 98 Fed. 192; *O'Brien* v. *Missouri K. & T. Ry. Co.,* 36 Tex. Civ. 528, 82 S. W. 319.) See, also, *Koschman* v. *Ash,* 98 Minn. 312, 116 Am. St. Rep. 373, 108 N. W. 514, which enumerates many other tools which have been held to be simple appliances.

There can be no legal duty on the master to go to an experienced servant, operating a simple tool, and tell him of defects which such servant already knows, or by the exercise of ordinary care should know. Of course, if the plaintiff had requested another jack, and the promise had been made to furnish it, and he continued to work with this jack because of such promise, then another element would come into the case, and the plaintiff, in the absence of contributory negligence in other respects in the use of the jack, might be entitled to recover, even in the case of a simple tool. But this the plaintiff did not do. · In *Kansas City & P. Ry. Co.* v. *Ryan,* 52 Kan. 637, 35 Pac. 292 (quoted from by appellant), the case was not defended on the theory that the jack was a simple or common tool, which the defendant need not inspect. However, in that case the court said: "This tool is not a complicated one, but in general use." In *Kennedy* v. *Chicago etc. Ry. Co.,* 57 Minn. 227, 58 N. W. 878 (quoted from by appellant), the question as to whether the jack was a simple tool, so as to bring it within the rule above stated, does not appear to have been raised or considered.

The plaintiff, as engineer of the machine, and whose duty it was to fix anything that went wrong, had equal, and even better, means of knowledge of the condition of the jack than did the defendant. (*Detroit Crude Oil Co.* v. *Grable,* 94 Fed. 73, 36 C. C. A. 94; *Tham* v. *J. T. Steeb Shipping Co.,* 39 Wash. 271, 81 Pac. 711; *Holland* v. *Durham Coal & Coke Co.,* 131 Ga. 715, 63 S. E. 289; *Christiansen* v. *William Graver Tank Works,* 223 Ill. 142, 7 Ann. Cas. 69, 79 N. E. 97; *Walker* v. *Scott,* 67 Kan. 814, 64 Pac. 615; *Kelley* v. *Wisconsin Central R. Co.,* 63 Wis. 307, 53 Am. Rep. 292, 23 N. W. 890.) It was a part of plaintiff's duties, for which he was employed, to inspect this jack, for and on behalf of defendant, if it is a tool requiring inspection. (*Stroble* v. *Chicago etc. Ry. Co.,* 70 Iowa, 555, 59 Am. Rep. 456, 31 N. W. 63; *Chicago & Alton R. R. Co.* v. *Bragonier,* 119 Ill. 51, 7 N. E. 688; *New Omaha Thompson-Houston E. L. Co.* v. *Rombold,* 68 Neb. 54, 93 N. W. 966, 97 N. W. 1030.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Plaintiff brought this action to recover damages for a personal injury sustained by him on the night of March 8, 1900, during the course of his employment by the defendant in its coal mine in Carbon county. On a former appeal (31 Mont. 359, 78 Pac. 595) defendant was awarded a new trial because the jury had disregarded certain instructions submitted by the trial court. The present appeal is by the plaintiff, from a judgment entered upon an order sustaining defendant's motion for a nonsuit.

It appears that at the time of the accident the plaintiff was operating a shearing machine. This machine consists of an electrical motor, with a steel or iron frame about three feet in height projecting horizontally forward six or seven feet, armed with a cutting device in the form of an endless chain in which are set small picks at short intervals. The chain is so adjusted to a system of wheels that it is carried by the motor along a bar at the top of the frame, over the front end, and returned along another bar on the lower side. The whole is set on trucks and is moved on a track constructed of iron rails. When it is put in operation, it is moved along the track until the picks are brought in contact with the face of the stratum or vein of coal. Power is then applied by means of the motor. The machine is prevented from "bucking" backward, by a jack set against the rear end and stayed against the roof of the mine. To prevent the machine from "climbing" as the picks dig into the coal, the forward end of the frame is held by clamps secured to iron posts extending from the floor of the mine to the roof on both sides of the frame. The machine makes a vertical cut into the body of coal, about four inches wide, three feet in height, and to a depth of the length of the frame. Frequently three such cuts are made from the floor upward; the number depending upon the thickness of the stratum. To make the third cut it is necessary to raise the forward end of the machine and to support it in that position. Its weight is about 1,800

pounds. It is lifted by the operator as circumstances require, by means of a pump-jack, which is supplied with the machine for that purpose. In place of the hardwood handle, about two and one-half feet in length, with which a pump-jack is usually operated, it was the custom of the employees in defendant's mine to use a sprag—a piece of hardwood about seventeen inches long, turned to a point at each end and intended to be used for blocking the wheels of cars. For want of a handle, the plaintiff was using a sprag at the time he was injured. The teeth or cogs upon the upright bar and upon the sprocket of the pump-jack used by the plaintiff were so worn that, when he raised the shearing machine, they slipped by each other, with the result that the weight of the machine coming suddenly down upon the upright bar threw the sprag upward so that the outer end of it struck the plaintiff in the right eye, destroying it.

Though the allegations of the complaint are broad enough to include in it the charge of negligence by reason of the defective condition of the clamps and posts, and some evidence was introduced with reference to it, it is admitted by counsel for the plaintiff that this condition contributed in no way to the injury. The same may be said of the sprag. It is not claimed that the failure of the defendant to supply a handle for the pump-jack contributed to the injury. These features of the case may therefore be excluded from consideration. The plaintiff relies upon the charge that the defendant was negligent in furnishing him a pump-jack which was defective, by reason of its worn-out condition. The defendant denies that it was guilty of any negligence, and alleges contributory negligence and assumption of risk by the plaintiff.

Among other assignments of error, we find two based upon rulings of the court in excluding certain items of evidence. These are not referred to in the argument; hence we conclude that counsel for the plaintiff abandoned them as being without merit.

Observing the rule that, in determining a motion for nonsuit, [1] the plaintiff is entitled to have his evidence considered in the light most favorable to him and as establishing every ma-

terial fact which it tends to prove (*Johnson* v. *Butte & Superior C. Co.*, 41 Mont. 158, 108 Pac. 1057), we may summarize the inferences which the evidence tends to justify as follows: (a) That the pump-jack was defective by reason of its worn condition; (b) that its condition was such that, when subjected to the use to which it was intended to be applied by plaintiff, it was likely to cause such an injury as that suffered by him; (c) that the defendant knew of its condition and that it was likely to cause injury to an employee who attempted to use it, yet that it wholly failed to advise plaintiff of the danger; (d) that the plaintiff did not know its condition and could not know it from such an examination as he was able to give it before he attempted to use it.  While conceding that the evidence tends to justify inferences "a" and "b," counsel for defendant deny that it justifies inferences "c" and "d."  Calling attention to the fact that the injury complained of occurred during the year 1900, and prior to the enactment of sections 5246 and 5248, Revised Codes, which declare every person operating a mine to be liable for damages sustained by an employee, without fault on his part, when caused by the negligence of a superintendent, foreman, shift boss, *etc.*, they insist that this case must be determined by the rules of the common law governing the relation of master and servant, and that, since it appears that the plaintiff's injury, if caused by the negligence of anyone, was caused by that of the foreman in charge of the machinemen at the time the accident occurred, the defendant is not liable because, though it appears that the foreman had knowledge of the conditions, he was a fellow-servant, and for this reason his knowledge was not imputable to the defendant.  In support of their contention that a foreman in a mine is a fellow-servant, they cite *Goodwell* v. *Montana C. Ry. Co.*, 18 Mont. 293, 45 Pac. 210; *Hastings* v. *Montana U. Ry. Co.*, 18 Mont. 493, 46 Pac. 264; *Allen* v. *Bell*, 32 Mont. 69, 79 Pac. 582; *Thurman* v. *Pittsburg & Mont. C. Co.*, 41 Mont. 141, 108 Pac. 588; and *Gregory* v. *Chicago, M. & St. P. Ry. Co.*, 42 Mont. 551, 113 Pac. 1123.  It must be conceded that, in the absence of such legislation as the provisions referred to, the boss of a section gang on a railroad, or a shift

boss in a mine, or the foreman of a gang of carpenters engaged in construction work, is a fellow-servant of the men with whom he is employed. Yet, as was pointed out in *Gregory* v. *Chicago, M. & St. P. Ry. Co., supra,* whether an employee is a vice-[2] principal or a fellow-servant depends, not upon the grade or rank he occupies among his associates, but upon the character of service he is required to perform. The name or designation given him is not conclusive. If for the time being he is the agent upon whom the employer has cast responsibility for the performance of nondelegable duties, he is, for the time and with reference to such duties, a vice-principal. Within the sphere of these duties he occupies the position of the employer; and if, for the time being, he is the controlling authority, he is charged with the performance of all the duties of the employer. He must exercise ordinary care to provide a reasonably safe place, reasonably safe and suitable appliances and materials, and reasonably competent fellow-servants. (*Monson* v. *La France C. Co.,* 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243.) Incidentally there exists, also, the implied duty of inspection when [3]  necessary (*Longpre* v. *Big Blackfoot Milling Co.,* 38 Mont. 99, 99 Pac. 131); and when the conditions are such that the employer is presumed to have knowledge of them, the same presumption attaches to the vice-principal. So, also, notice to the latter is notice to the employer.

A brief reference to the evidence will serve to demonstrate that the contention of counsel is not maintainable. The witness [4]  Feeley had been in the employ of the defendant continuously from the year 1895. He testified: "In the month of March, 1900, I was night foreman for the machinemen. Franklin was the superintendent. In the night-time he was seldom around. I had full charge and control of the operations that were carried on in the night-time. There was no one else. I had charge of the machinery. I had charge of assigning men to work and assigning machines to the men for use. I also had authority to hire and discharge men. * * * I knew the pump-jack that was used by the plaintiff the night he was

injured. I knew it probably a month before the night he was injured, and I knew that it was in a defective condition. I knew the cogs were worn on the upright bar and the sprocket, and sometimes when it got under a strain—that is, under a lift— that it would slip down. In connection with its slipping in that way, there was danger connected with its operation. When it would slip down, it would catch again and throw the handle that would be in the socket. It would throw the handle up, and there was danger that the handle thus thrown would hit a man in the face or in the body.  *  *  *  I made a complaint about it, or rather reported about it to Mr. Franklin, the superintendent, and he said—he told me to send it out and have it repaired. It was not repaired.'' This witness also testified that without a careful examination of the pump-jack, by manipulation of it, which would consume considerable time and would require a better light than was available in the mine, where only miners' lamps were in use, its defective condition would not be observed. At the request of counsel for the defendant he made an examination, in the presence of the jury, of a pump-jack which was shown to be in the same condition as the one in use by the plaintiff, and made it apparent that the statement that an inspection of it, even in the light of day, unaided by manipulation, would not disclose its condition. He was corroborated, generally, in his statement by the witness Muldoon, who was in the employ of the defendant as a machine operator until about March 1, 1900. He stated that one could not determine the condition of a pump-jack without testing it, that is, "by lifting a machine with it or lifting a weight.'' He knew of the condition of the pump-jack used by plaintiff, had complained of it to the shift boss, and had discarded it, being directed by the shift boss to obtain another. The plaintiff was an experienced miner. He testified that, though he had never before operated a shearing machine, he had seen such machines operated; that he had been operating this one about four hours when he was injured; that he did not know of the condition of the pump-jack, not having been informed by anyone with refer-

ence to it; and that he undertook to use it without making examination of it because it was the only one there for him to use. He explained that he attempted to raise the machine because, as it progressed in making the cut, it encountered a hard "bunch" or deposit of sulphur which caused it to "climb." Having placed the jack under the machine, he was manipulating it, when the upright bar suddenly slipped back causing the machine to drop, with the result that the sprag was jerked upward from his hand and struck him in the eye.

This partial synopsis of the evidence furnishes ample justification, *prima facie*, for inferences "c" and "d," and makes out a case which the court should have submitted to the jury, for if Feeley was for the time being a vice-principal, his knowledge was that of the defendant; or, if it be assumed that he was a fellow-servant, it appears that he had communicated knowledge of the condition of the pump-jack to the superintendent, and it is not disputed that the latter was the representative of the defendant. So that, upon either theory as to the responsibility of Feeley's position, the defendant was at fault. The plaintiff had a right to assume that the defendant had discharged its full duty with reference to his safety, and it was incumbent [5] upon him, when ordered to his task, to yield instant obedience and not consume the time in making tests, examinations, and experiments in order to ascertain whether the appliances furnished him were suitable and safe. (*Schroder* v. *Montana Iron Works*, 38 Mont. 474, 100 Pac. 619; *Texas & Pac. Ry. Co.* v. *Archibald*, 170 U. S. 665, 42 L. Ed. 1188, 18 Sup. Ct. Rep. 777.) He was not bound to go further than to make such observation as the circumstances permitted in order to discover patent, obvious defects. (*Stewart* v. *Pittsburg & Mont. C. Co.*, 42 Mont. 200, 111 Pac. 723; *Rietman* v. *Stolte*, 120 Ind. 314, 22 N. E. 304.)

Counsel for defendant contend, however, that a pump-jack [6] is an ordinary, simple tool, and that it must be presumed that the plaintiff was as well qualified to judge of its condition as was the defendant. They rely on the rule that if an appli-

ance is a simple one, in which a defect is apparent or is readily ascertainable by ordinary observation by a person of the age and experience of the particular employee, in the exercise of ordinary care, his means of observation being equal to those of his employer, such employee assumes the risk and cannot recover for an injury resulting from its use. There can be no question as to the soundness of this rule; nor can it be questioned that when an instrumentality furnished to an employee becomes obviously defective because of and during its use, its retention and use thereafter by the servant is at his own risk. (*Rietman* v. *Stolte, supra; Longpre* v. *Big Blackfoot Milling Co., supra.*) But these principles have no application to the facts in this case. As the evidence shows, the defendant had actual knowledge of the defect in the pump-jack. It did not inform the plaintiff of its condition. The defect was not obvious, but could be discovered only by manipulations or tests. The plaintiff's opportunity for observation, working as he was in the scanty light furnished by an ordinary miner's lamp, was not equal to that of the defendant. He had a right to assume that the defendant had done its full duty, and hence that it would have informed him of the danger attending the use, if it had knowledge of it. In view of all these considerations, we do not think it ought to be said as a matter of law that the plaintiff is not entitled to recover, even if it be assumed that a pump-jack is a simple appliance. In *Stork* v. *Charles Stolper Cooperage Co.*, 127 Wis. 318, 7 Ann. Cas. 339, 106 N. W. 841, the plaintiff had sued for damages for an injury to an employee, occasioned by using a monkey-wrench which was defective. The defect was not such that it was obvious to one attempting to use the wrench without special examination. After recognizing the rule contended for by counsel for defendant, and also the rule that the employer is exempt from the duty to inspect simple tools, the court said: ''While these rules result practically in a relaxation of the master's duty and liability in the case of such simple tools, they are not at all in denial of the general underlying principle of the law of negligence that one who neg-

ligently exposes another to a likelihood of injury is liable therefor, in the absence of consent by such other or of contributory negligence. As stated above, the relaxation of the master's duty and liability rests on the assumed equality of knowledge and ability to discover the defect complained of. It can have no application to a defect of which the master is actually cognizant, and which, as a reasonable man, he should appreciate is likely to result in injury to one using the implement as it is likely to be used, and which is neither known to the employee nor of such a character as to be obvious to that observation which may be expected to accompany its use. In such case the general rule of negligence as above stated is fully effective, and the master who knowingly and negligently exposes his employee to a peril unknown to the latter must respond for the damage which results.'' This statement, we think, embodies the rule applicable here. We have not assumed to determine whether a pump-jack is a simple appliance, because the case presented by the evidence renders this unnecessary.

We are further of the opinion that the evidence does not justify, *prima facie,* a conclusion either that the plaintiff assumed the risk or that he was guilty of contributory negligence. In either case the proper inference was for the jury to draw under appropriate instructions.

The judgment is reversed, and the cause is remanded, at the cost of the defendant.

*Reversed and remanded.*

Mr. Justice Smith and Mr. Justice Holloway concur.