GRANT, ADMR., RESPONDENT, v. NIHILL, APPELLANT.

(No. 4,854.)

(Submitted September 15, 1922. Decided October 19, 1922.)

[210 Pac. 914.]

*Personal Injuries—Master and Servant—Vice-principals—Negligence—Complaint—Sufficiency—Inferences—Assumption of Risk—Safe Place to Work—Failure to Warn.*

Personal Injuries—Master and Servant—Safe Place to Work—Failure to Warn—Complaint—Sufficiency as Against General Demurrer.

1. Complaint in an action by a farm-hand for injuries sustained by being jolted from the platform of a plow pulled by a steam tractor when a rock got under the platform insecurely fastened, alleging, among other things, under a general allegation after setting forth the facts with relation to the unsafe condition of the platform, that the injury was caused solely by the carelessness and negligence of defendant employer, his agents and servants, in failing to provide a safe place to work in, to warn him of the hazardous character of his employment, *etc.*, was sufficient as against a general demurrer, an objection to the introduction of evidence and motions for nonsuit and for a directed verdict.

Same—Negligence—Proximate Cause—Complaint.

2. In an action for damages caused by negligence the complaint must allege that the injury resulted proximately from the negligent act charged.

Same—Complaint—General Demurrer—Liberal Rule of Construction.

3. Under the liberal rule of construction of pleadings provided by the codes (secs. 9164, 9191), in determining the issues of law presented by a general demurrer to the complaint or by objection to the introduction of evidence, matters of form as well as allegations which are irrelevant or redundant must be disregarded, and if the pleading warrants recovery in any amount and upon any admissible theory, it will be sustained.

Same—Complaint—Lack of Substance—Rule of Construction on General Demurrer—Inferences.

4. As against an attack on a pleading for lack of substance, and in the absence of a special demurrer or motion, whatever is necessarily implied in or is reasonably to be inferred from an allegation is to be taken as directly averred.

Same—Master and Servant—Assumption of Risk.

5. By his act of entering into the service of his master the servant assumes all the usual and ordinary risks attendant upon his employment, not including risks arising from the negligence of the master, and he assumes these also if he knows of the defects from which they arise and appreciates the dangers which flow from them.

Same—Defective Implements—When Warning Unnecessary.

6. Where the dangers of an employment are visible so that a reasonably prudent adult of sound mind, though not an expert, could

[64 Mont. 420.]

not fail to see and comprehend them, he is chargeable with knowledge and his employer is not under obligation to warn the employee of their existence.

Same—Assumption of Risk—When Assumed, When not.
7. An employee who, with knowledge of the defective machinery with which he is required to work, continues in the employment upon assurance by the employer that the defect would be repaired, may do so for a reasonable length of time without assuming the added risk, unless the danger is so great that a reasonably prudent man would not have continued to work.

Same—Appreciation of Danger—Evidence—Sufficiency.
8. *Held,* that the contention of plaintiff, who had admitted that he had discovered the defect in the steam plow which caused his injury, that he did not realize or appreciate the danger incident to his continuing to work with it, was not borne out by the evidence.

Same—Vice-principal—Question of Law.
9. Whether a coemployee acts as a fellow-servant or as a vice-principal under a given state of facts is a question of law for the court.

Same—Vice-principal—How Question Determinable.
10. Superior position or authority alone does not necessarily make a coemployee a vice-principal, the question whether such person acts in the place of the principal being determinable by the inquiry whether he was intrusted with and authorized to perform a nondelegable duty, such as providing the employee with a safe place to work in or safe implements with which to work, required of the employer, the question of grade or rank being of no moment.

Same—Coemployee not Vice-principal, When.
11. Where defendant's farm foreman had no authority to place the engineer in charge of a steam tractor, over plaintiff who operated the plow attached thereto, or to delegate to him the duty to repair the platform attached to the plow upon which plaintiff was working and the nature of the work the two were engaged in did not require one to be superior to the other, the action of the engineer in promising to get the necessary bolts with which to fasten the platform to make it secure was the action of a fellow-servant and not of a vice-principal.

*Appeals from District Court, Fergus County; Jack Briscoe, Judge.*

ACTION by Walton H. Grant, administrator of the estate of Peter Anderson, deceased, against Patrick Nihill. From a judgment for plaintiff and an order overruling defendant's motion for new trial, defendant appeals. Reversed, with directions to dismiss.

7. Repairs promised by master as affecting servant's assumption of risk, see notes in 23 **Am. St. Rep.** 385; 119 **Am. St. Rep.** 434; 4 **Ann. Cas.** 153; 9 **Ann. Cas.** 1011; **Ann. Cas.** 1913C, 505.

*Messrs. Blackford & Huntoon* and *Messrs. Walsh, Nolan & Scallon,* for Appellant, submitted a brief; *Mr. J. C. Huntoon* argued the cause orally.

The complaint is insufficient. Its averments are that the platform was insecurely fastened and was loose and likely to rock and tilt, and that the platform, while plowing was being done across rough and irregular land, tilted and pitched, and threw plaintiff therefrom. Nowhere does it appear that the tilting and pitching of the platform was occasioned by reason of the fact that the platform was insecurely fastened. In other words, it does not appear that the injury had any connection whatsoever with the negligent act complained of. To bring more pointedly into relief the defect that we are discussing, we assert that an averment such as the following should appear: "That on the twenty-fourth day of May, the platform, while the plow was running across rough and irregular ground, and by reason of its unfastened condition, tilted and pitched," *etc.* (*Fusselman* v. *Yellowstone Valley Irr. Co.,* 53 Mont. 254, Ann. Cas. 1918B, 420, 163 Pac. 473; *Ellinghouse* v. *Ajax Livestock Co.,* 51 Mont. 275, L. R. A. 1916D, 836, 152 Pac. 481; *Stones* v. *Chicago, M. & St. P. Ry. Co.,* 59 Mont. 342, 197 Pac. 252; *Markarites* v. *Chicago, M. & St. P. Ry. Co.,* 59 Mont. 493, 197 Pac. 743.)

Thus, plaintiff avers "that plaintiff was not familiar with the work * * * and had no previous experience of the working or operation of such an outfit * * * ; did not possess sufficient knowledge to know whether or not the same was safe * * * ," *etc.*

It is obvious that the pleader in making these averments was seeking to plead a breach of duty on the part of the master in failing to instruct or warn the servant. There is no averment in the pleading anywhere that the master knew, or, in the exercise of reasonable care might have known, that the servant was inexperienced. It is only under these circumstances that the master is required to act. (*Kelley* v. *Cable Co.,* 7 Mont. 70, 14 Pac. 633.) It is not necessary to instruct the servant regarding the machine if he understands it. (*Mit-*

*chell* v. *Boston & Montana Consolidated etc. Min. Co.,* 37
Mont. 575, 97 Pac. 1033.)

It is not the duty of the master to warn a servant of
dangers of which the master does not know, or to warn him
of dangers of which the servant is aware. (*Therriault* v.
*England,* 43 Mont. 376, 116 Pac. 581; *Kuphal* v. *Western
Montana F. Co.,* 43 Mont. 18, 114 Pac. 122.) It is elementary
law that no matter how remiss the master is in the field of
negligence, unless that negligence in some way contributes to
the injury complained of, it is of no consequence. There must
be a causal connection between the negligence alleged and the
injury. (*Bracey* v. *Northwestern Improvement Co.,* 41 Mont.
338, 137 Am. St. Rep. 738, 109 Pac. 706.) The negligence
complained of must be the proximate cause of the injury.
(*Cummings* v. *Reins Copper Co.,* 40 Mont. 599, 107 Pac. 904.)

A servant assumes all the usual and ordinary risks attend-
ant upon his employment, not including risks arising from
negligence of the master, and he assumes those as well if he
knows of the defects from which they arise and appreciates
the dangers which flow from such defects. (*Coulter* v. *Union
Laundry Co.,* 34 Mont. 590, 87 Pac. 973; *Fotheringill* v.
*Washoe Copper Co.,* 43 Mont. 485, 117 Pac. 86; *McCabe* v.
*Montana Central Ry. Co.,* 30 Mont. 323, 76 Pac. 701.) Actual
knowledge of servant of danger is not necessary in order that
he assume the risk. If the circumstances are such that a rea-
sonably prudent man ought to have known of the danger, he
will be charged with the knowledge. (*Anderson* v. *Northern
Pac. Ry. Co.,* 34 Mont. 181, 85 Pac. 884; *Molt* v. *Northern
Pac. Ry. Co.,* 44 Mont. 471, 120 Pac. 809.) In the case of
an adult servant of sound mind and where the dangers are
visible to a man of ordinary intelligence, there is no obligation
on the master to warn the servant. (*Masich* v. *American
Smelting Co.,* 44 Mont. 36, 118 Pac. 764.) Actual ignorance
of a particular risk does not relieve the servant of the im-
putation of having assumed it. He is bound to use his senses,
and cannot allege ignorance of a hazard which is obvious to
anyone of ordinary intelligence and understanding. (*Sorenson*

v. *Northern Pac. Ry. Co.*, 53 Mont. 268, 163 Pac. 500.) An employer is not an insurer. His duty is discharged when he furnishes the appliances in general use for the same purpose and operated in the same way by reasonably prudent and careful men under like circumstances. (*Wallace* v. *Chicago, etc. Ry. Co.*, 48 Mont. 427, 138 Pac. 499.)

*Mr. S. P. Williams, Mr. Ralph J. Anderson* and *Messrs. Wheeler & Baldwin* submitted a brief; *Mr. James H. Baldwin* argued the cause orally.

It is settled law in this state that an employer owes a legal duty to his employee: 1. To use reasonable care to furnish him for the performance of the work required of him reasonably safe and suitable tools, machinery and appliances and also to see that the same are kept in proper repair and that this duty cannot be delegated to another so as to relieve the employer from liability for injuries sustained by the employee by reason of a failure to perform it properly. (18 Ruling Case Law, p. 737; *Johnson* v. *Boston etc. Min. Co.*, 16 Mont. 164, 40 Pac. 298; *McCabe* v. *Montana Central Ry. Co.*, 30 Mont. 323, 76 Pac. 701.)

2. To use reasonable care to provide a reasonably safe place in which the employee may perform his services and a failure to do so is actionable negligence. (*Kelley* v. *Fourth of July Min. Co.*, 16 Mont. 484, 41 Pac. 273; *McCabe* v. *Montana Central Ry. Co.*, 30 Mont. 323, 76 Pac. 701; *Domitrovich* v. *Stone & Webster Engineering Corp.*, 44 Mont. 7, 118 Pac. 760; *Kallio* v. *Northwestern Imp. Co.*, 47 Mont. 314, Ann. Cas. 1915A, 1228, 132 Pac. 419.) A reasonably safe place presupposes such a condition as ordinary care, skill and diligence will secure under all the surrounding circumstances. (*Morelli* v. *Twohy Bros. Co.*, 54 Mont. 366, 170 Pac. 757.)

3. To warn the employee of danger unless it is known to and appreciated by the latter or so obvious that a reasonable man would have known and appreciated it, the principle being that if the employer has knowledge or information showing that the particular employment is from extraneous causes

known to him hazardous or dangerous to a degree beyond that which it fairly imports or is understood by the employee to be, he is bound to inform the latter of the fact and put him in possession of such information. (*Coleman* v. *Perry,* 28 Mont. 1, 72 Pac. 42; *Stephens* v. *Elliott,* 36 Mont. 92, 92 Pac. 45.)

The complaint proceeds upon the theory that the defendant owed each of these duties to the plaintiff; that he failed to perform any of them; that as a result plaintiff was injured and that the breach of duty was a proximate cause of the injury of which complaint is made. It appears from the complaint, either by direct averment or by fair inference, that defendant owed a duty to plaintiff; that he failed to perform that duty; that injury resulted to plaintiff from this breach of duty and that the breach of duty was a proximate cause of the injury. The conclusion is inevitable that the complaint states facts sufficient to constitute a cause of action and that the court was not in error in overruling the general demurrer thereto or the objection to the introduction of evidence.

While it is true that the defense of assumption of risk may be interposed by an employer in an action for injury suffered by his employee as the result of an extrahazardous condition due to a failure on his part to perform one of his primary duties, it is essential to the making of that defense under the condition suggested that the employee not only knew of the thing from which the extrahazard or danger flowed, but also knew of and appreciated the increased hazards and dangers resulting therefrom or that they were so obvious that an ordinarily prudent person placed in the same circumstances must have known and appreciated them. (*Osterholm* v. *Boston etc. Min. Co.,* 40 Mont. 508, 107 Pac. 499; *Stewart* v. *Pittsburg etc. Copper Co.,* 42 Mont. 200, 111 Pac. 723; *Alexander* v. *Great Northern Ry. Co.,* 51 Mont. 565, Ann. Cas. 1918E, 862, 154 Pac. 914; *Sorenson* v. *Northern Pac. Ry. Co.,* 53 Mont. 268, 163 Pac. 500; *Morelli* v. *Twohy Bros. Co.,* 54 Mont. 366, 170 Pac. 757.)

[64 Mont. 420.]

The employee may not set up his judgment against that of his recognized superiors; on the contrary, he may rely upon their advice, assurance and commands, notwithstanding many misgivings of his own. It by no means follows that because he could justify disobedience of the order, he is barred of recovery for injuries received in obeying it.. He is not required to balance the degree of danger and decide whether it is safe for him to act, but is relieved in a measure of the usual obligation of exercising vigilance to detect and avoid the danger. Especially when the act is one that could be made safe by the exercise of special care on the part of the employer, the employee may assume that such care will be taken. Again, it is a psychological truth that employees form a habit of obedience that overcomes independent thought and action depriving them of power to exercise the intelligence that otherwise would protect them. This principle applies in case the employee performs the service pursuant to assurance of the absence of danger as well as where the inducement takes the form of a command or order. (8 Ruling Case Law, pp. 701, 703; *Stomne v. Hanford Produce Co.*, 108 Iowa, 137, 78 N. W. 841; *Forsman v. Seattle Electric Co.*, 58 Wash. 666, 109 Pac. 121; *Cox v. Wilkeson Coal & Coke Co.*, 61 Wash. 343, 112 Pac. 231; *Sorenson v. Northern Pac. Ry. Co.*, 53 Mont. 268, 163 Pac. 500.)

The duty to use reasonable care to furnish the employee with reasonably safe tools, machinery and appliances is closely related to the duty to furnish a reasonably safe place to work and is governed by the same rules. A servant to whom such duties is intrusted is a vice-principal and for his negligent act or omission in regard thereto the employer is liable. (26 Cyc., p. 1326; *Verlinda v. Stone & Webster Eng. Corp.*, 44 Mont. 223, 119 Pac. 573; *Vanyi v. Portland etc. Mills Co.*, 63 Or. 520, 128 Pac. 830; *Carnahan v. Chicago, B. & Q. Ry. Co.*, 102 Neb. 76, 165 N. W. 956.) The person intrusted with such duties is not a fellow-servant of the one injured because of his failure to properly inspect and repair. (26 Cyc., p. 1332; *Longpre v. Big Blackfoot Milling Co.*, 38 Mont. 99, 99 Pac.

131; 4 Thompson on Negligence, sec. 4928.) Notice to the employee instructed with the duty to inspect and repair a defect in the machinery or appliances is notice to the employer. (*Anderson* v. *Elder*, 105 La. 672, 30 South. 120; *Burch* v. *Southern Pac. Co.*, 32 Nev. 75, Ann. Cas. 1912B, 1166, 104 Pac. 225; *McAllister* v. *Rocky Fork Coal Co.*, 45 Mont. 433, 123 Pac. 696.)

An employee who is temporarily occupying the position of a vice-principal is for the time being himself a vice-principal. (26 Cyc., p. 1318; *Day* v. *Chicago, etc. R. Co.*, 284 Ill. 534, 120 N. E. 480; *Miller* v. *Tall Timber Co.*, 143 La. 269, 78 South. 555; *Hitchcock* v. *Arctic Creamery Co.*, 170 Iowa, 352, 150 N. W. 727.) The accepted doctrine, therefore, is that in order to charge the employee with assumption of risk, the dangers and not the defects alone must be so obvious that a reasonably prudent man would have avoided them, that is to say, the true test for the determination of the question whether the employee did assume the risk is not to inquire whether he was aware of the defect which caused his injury but whether that defect rendered the peril of remaining in the service so imminent that he ought to have abandoned it. (3 Labatt's Master & Servant, sec. 1208; 18 Ruling Case Law, 694, sec. 179; *Alexander* v. *Great Northern Ry. Co.*, 51 Mont. 565, Ann. Cas. 1918E, 862, 154 Pac. 914; *Kinsel* v. *North Butte Min. Co.*, 44 Mont. 455, 120 Pac. 797; *Hollingsworth* v. *Davis-Daly Estates Copper Co.*, 38 Mont. 143, 99 Pac. 142.)

To the general principle that an employee by continuing in the service with knowledge of its perils is debarred from recovering for injuries resulting therefrom, there has come into general recognition an exception known as the doctrine of notice and promise to repair. According to this doctrine, if an employee complains to or notifies the employer of an apprehended peril, such as may be due to defective instrumentalities, and the employer promises to remedy the defect, the employee may continue in the service for a reasonable time, with a right to hold the employer liable in case injury ensues. (18 Ruling Case Law, pp. 649, 696, secs. 142, 180; 3 Labatt's

[64 Mont. 420.]

Master and Servant, sec. 1197; *Burch* v. *Southern Pac. Co.*, 32 Nev. 75, Ann. Cas. 1912B, 1166, 104 Pac. 225; *Cornell* v. *Great Northern Ry. Co.*, 57 Mont. 177, 187 Pac. 902; *Stoutenburgh* v. *Dow Gilman etc. Co.*, 82 Iowa, 179, 47 N. W. 1039; *Detroit Crude Oil Co.* v. *Grable*, 94 Fed. 73, 36 C. C. A. 94.)

MR. CHIEF COMMISSIONER LENTZ prepared the opinion for the court.

Plaintiff obtained a judgment for $15,000 for injuries received on May 24, 1917, from being run over by a traction plow which was operated on defendant's farm near Moore, Montana. Defendant has appealed from the judgment and from an order overruling his motion for a new trial.

The complaint alleges, among other things, negligent failure on the part of the defendant to provide plaintiff with a safe place to work and failure to warn him of the hazards incident to his employment. Defendant's answer admits the employment and the injury, denies the other material averments of the complaint, and as a special defense alleges that plaintiff assumed the risks incident to the employment.

The plowing outfit consisted of ten mold board plows pulled by a steam traction engine. Two levers were attached to each of the ten plows, making twenty levers in all. One lever was used in regulating the depth and the other in raising the plow off the ground. In front of or over the plows, and resting on steel girders and stringers, was a wooden platform about three or four feet wide and ten or twelve feet long, in three sections, each section consisting of boards two inches thick resting in and on an angle iron frame and bolted to the steel framework below. The angle iron in which the boards rested extended around the entire outer edge of the board platform of each section and almost or quite flush with the upper surface of the boards. The individual boards of each section were attached together so that the wooden part of the platform if removed from the angle iron frame would have to come out as one piece. The wooden portion of each section was fastened to the stringers below by means of bolts, which, if in

proper order, held the platform rigid. It was plaintiff's duty to stand upon this platform with his back to the engine, and operate the plows by means of the levers regulating the depth and lifting the plows out of the ground while making turns or when otherwise necessary, and also to keep the plow greased and change the plow points. The engine was operated by one Harrison Boner, with the assistance of a helper who usually did the steering, and who acted under Boner's orders. On the occasion of the injury, plaintiff, in making the turn at the corner of the field was lifting the plows from the ground by means of the levers, when he lost his balance and fell from the platform in front of or under the plows and was run over. He testified that a rock got under the platform and raised the wooden portion out of the angle iron frame seven or eight inches, causing him to fall beneath the plows.

Plaintiff further testified that he started to work for the defendant, Nihill, the fore part of May, 1917; that he was employed and assigned to work on the plow by one Bert Barrick, who was defendant's foreman and manager; that he told Barrick he had had no experience with this kind of a plow, but was willing to learn; that he had formerly operated a disc traction plow, but had had no experience with the mold board variety of plow; that when he started to work Barrick spent several hours showing him how to regulate the levers and work the plow, and came out at different times afterward and showed him other things about running it; that Barrick told him Harrison Boner was to have charge of the outfit, and he would take his orders from Boner, and that thereafter Boner did give him orders, telling him when to go to work in the morning and when to quit; that he had operated the plow for about six days prior to the morning of the accident and had encountered no trouble with it; that, when he first started working, the ground was level and without rocks, but on the afternoon before the accident they began plowing in ground that was very rough and rocky; he had seen rocks underneath, but none large enough to tip the platform over; on that afternoon he first noticed that the wooden portion of

the rear section of the platform was not securely fastened
down; there were two bolts for the purpose of holding down
the wooden portion of this section; on one of these bolts the
threads were worn off so that the nut, which was on the under
side, could not be screwed tight; the other was just a spike or
little old bolt about the size of a twenty-penny nail, which was
not threaded and had no nut on it, and as a consequence, when
running over the rough ground, the platform would not go
steady, but worked up and down; that on the afternoon be-
fore the accident plaintiff told Boner to get some bolts and
bolt the platform because it was shaky; that Boner said the
platform was all right, it was not anything to be afraid of,
it would not come out, it would stay down in the frame and
would not tip over; that Boner said he would have the fore-
man get some bolts, he (Boner) did not have any that would
fit; they were all too big to fit the holes; that plaintiff was
inexperienced and did not appreciate the danger and relied
upon the statement made by Boner; that at all times while
engaged upon said plow outfit he exercised due care for his
own safety; that Boner said the next forenoon he had sent
for bolts, and the foreman did not get the right size; that
Boner did not try any bolts to see if they would fit; that the
foreman was "out there" about half an hour or so before
plaintiff got hurt and "had some bolts"; that plaintiff was
busy changing the plow points, and said nothing to the fore-
man about the loose bolts then or at any other time; that no
bolts were placed in the platform before the accident; that
at the time of the accident about 9 or 10 o'clock in the fore-
noon he was lifting the plows to make a turn at the corner
of the field; he had lifted seven or eight plows, beginning at
the front, and while he was standing on the rear section of the
platform a rock two or three times the size of a man's hat
got under the end of the platform on which he was standing
and lifted the wooden portion of it up, and he was thrown over
backward beneath the plows and sustained the injuries alleged
in the complaint.

[64 Mont. 420.]

Boner testified that immediately after the injury plaintiff announced that while he was starting to operate one of the levers a plow encountered an obstruction, causing another lever to fly up and strike him in the face, and that the blow knocked him off the platform. He denied that he had charge of the outfit or ever at any time gave orders to plaintiff.

Both Barrick and Boner testified that the matter of bolts was never mentioned to or by either of them, and both denied any knowledge of the alleged defect either before or after the accident. Barrick denied that he ever placed Boner in charge of the outfit or told plaintiff to take orders from him. He did testify, however, that nothing could go unless he (Boner) ran the engine, and "of course he [Boner], was the main man."

There is nothing in the record to show that the defendant, Nihill, gave Barrick direct authority to place Boner in charge of the outfit or to place the plaintiff under Boner's orders. Nihill testified that he did not give Barrick any such authority. The record further shows that Boner did some repairing on "the machinery," and that he was the only one who actually did any repairing on the machinery. It does not appear whether this repairing was done on the plow or the engine, or both. There is some testimony in the record to show that, if anything went wrong, anyone on the outfit who knew how "was supposed to fix it." The record further shows that Barrick was defendant's foreman in his farming operations, with general authority to direct the work and to hire and discharge the employees; that defendant was then operating four farms, consisting in all of about 4,700 acres. Three of these farms were not far from Moore, while the fourth was about five miles away. Barrick's duties in superintending the work were such that he did not always visit each farm every day. He traveled in an automobile and tried to visit each farm every day. There is nothing in the record to show that defendant personally superintended any of the actual farming operations.

The first contention is that the complaint does not state a cause of action. The sufficiency of the pleading was attacked by general demurrer, by objection to the introduction of evidence, and by motions for nonsuit and for a directed verdict.

Besides the allegation of the employment and of the damages resulting from the injury, the material averments of the complaint are as follows: "I. * * * That plaintiff was not familiar with the work he was set to do, to-wit, the regulation depths, *etc.*, of the plows; that he has never done such work before, and that defendant and his agents were familiar with said work and the hazards incident thereto; that plaintiff was put to work by defendant on the plows, regulating the depth thereof, and in so doing had to stand and work upon a platform immediately over the said plows; that the said platform was insecurely fastened over the said plows; that the said platform was insecurely fastened and was loose and likely to rock and tilt, making the footing of the plaintiff unsafe and hazardous; that plaintiff complained to defendant and his foreman about the condition of the said platform, and was assured by the defendant and his said foreman that the said plows and platform were in a perfectly safe condition, and that no harm or injury could befall him by reason of the then condition of the said platform and of said plow outfit; that plaintiff was unfamiliar with the same and had no previous experience of the working or operation of such an outfit, and relied solely on the knowledge and ability of defendant and his foreman, and believed implicitly in their statement that the platform and outfit were in all respects safe, and constituted a safe place for plaintiff to work.

"II. That the platform was an unsafe place for plaintiff to work, and plaintiff did not possess sufficient knowledge to know whether or not the same was safe or unsafe, and that plaintiff relied implicitly upon the statement of defendant and defendant's foreman and agent that the said platform was a safe place upon which to work thereon; that on or about the said twenty-fourth day of May, 1917, the said platform, while the

said plow was being drawn across rough and irregular land, tilted and pitched, and threw plaintiff therefrom and underneath the plows; that plaintiff had no opportunity to cry out; and that the plows were not stopped, but were dragged across plaintiff injuring plaintiff in his legs, arms, spine, and spinal column, and particularly.   *   *   *

"IV.  That said injury was caused solely by the carelessness and negligence of defendant, his agents, servants, and employees, in not providing a safe place in which plaintiff could work, and in failing to warn plaintiff of the hazards incident to his employment; that plaintiff was, at the time of his said injury, and at all times while engaged upon said plow outfit, exercising due care for his own safety, and in no ways contributed to his said injury as above set forth."

It will be noticed that it is alleged that the platform was defective because it was likely to rock and tilt, and that this defective condition was due to the fact that it was insecurely fastened and loose.  In paragraph II it is alleged that the platform, while being drawn across rough and irregular land, did tilt and pitch so as to throw the plaintiff off.  Defendant contends that the court will take judicial notice that a platform or any piece of machinery will tilt and pitch while being drawn across rough and irregular land, and that it does not necessarily follow that, because the platform did tilt and pitch in going over rough or irregular ground, this was due to the fact that the platform was insecurely fastened or was loose; that, in the absence of some direct allegation that the tilting or pitching of the platform was caused or occasioned by its unfastened condition, the complaint does not state a cause of action.  It will also be noted, however, that in the fourth paragraph the complaint contains the general allegation: "That said injury was caused solely by the carelessness and negligence of defendant, his agents, servants and employees, in not providing a safe place in which plaintiff could work, and in failing to warn plaintiff of the hazard incident to his employment."  Plaintiff contends that this allegation is sufficient to establish

the causal connection between the negligence alleged and his injury.

To state a cause of action for damages resulting from neg-
[1, 2] ligence, the complaint, of course, must allege that the injury resulted proximately from the negligent act charged. In *Ecclesine* v. *Great Northern R. Co.*, 58 Mont. 470, 194 Pac. 143, this court said: "Actionable negligence arises only from a breach of legal duty, and, to state a cause of action for damages resulting from negligence, it is necessary that the complaint disclose the duty, the breach, the resulting damages, and that the breach of duty was a proximate cause of the injury."

Again, in *Barry* v. *Badger*, 54 Mont. 224, 169 Pac. 34, this court said: "It is elementary that, when the plaintiff seeks recovery for actionable negligence, his complaint must allege facts showing these three elements: (1) That the defendant was under a legal duty to protect him from the injury of which he complains; (2) that the defendant failed to perform this duty; and (3) that the injury was proximately caused by defendant's delinquency. All of these elements combined constitute the cause of action; and if the complaint fails to disclose, directly or by fair inference from the facts alleged, the presence of all of them, it is insufficient, for it fails to state the facts constituting a cause of action." Of like effect are the declarations of this court in *Fusselman* v. *Yellowstone Valley Irr. Co.*, 53 Mont. 254, Ann. Cas. 1918B, 420, 163 Pac. 473; *Ellinghouse* v. *Ajax Livestock Co.*, 51 Mont. 275, L. R. A. 1916D, 836, 152 Pac. 481; *Stones* v. *Chicago, M. & St. P. Ry. Co.*, 59 Mont. 342, 197 Pac. 252.

"In the construction of a pleading, for the purpose of
[3] determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." (Sec. 9164, Rev. Codes 1921.) "The court must, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties, and no judgment shall be reversed or

affected by reason of such error or defect." (Sec. 9191, Rev. Codes 1921.)

In determining the issues of law presented by a general demurrer to the complaint or by an objection to the introduction of testimony, matters of form will be disregarded, as well as allegations that are irrelevant or redundant, and, if the allegations of the complaint warrant a recovery in any amount and upon any admissible theory, the pleading will be sustained. (*Hurley* v. *Great Falls Base Ball Assn.,* 59 Mont. 21, 195 Pac. 599; *Hicks* v. *Rupp,* 49 Mont. 40, 140 Pac. 97; *Wheeler etc. Mer. Cq.* v. *Moon,* 49 Mont. 307, 141 Pac. 665.) This is necessarily so for the reason that, under the practice established by the Code in this state, ambiguity, unintelligibility and uncertainty in a complaint must be taken advantage of by demurrer, pointing out specifically the particular defect relied upon, and, if this is not done, the defendant must be deemed to have waived such defect. (Secs. 9131, 9132, 9136, Rev. Codes 1921; *Didriksen* v. *Broadview Hardware Co.,* 58 Mont. 421, 193 Pac. 63.)

It is equally well settled that, as against an attack for lack [4] of substance, and in the absence of a special demurrer or motion, whatever is necessarily implied in, or is reasonably to be inferred from, an allegation, is to be taken as directly averred. (*Woodward* v. *Melton,* 58 Mont. 594, 194 Pac. 154; *Gauss* v. *Trump,* 48 Mont. 92, 135 Pac. 910; *County of Silver Bow* v. *Davies,* 40 Mont. 418, 107 Pac. 81; *Willoburn Ranch Co.* v. *Yegen,* 49 Mont. 101, 140 Pac. 231; secs. 9164, 9191, Rev. Codes 1921.)

In *Gauss* v. *Trump, supra,* this court, speaking through Mr. Justice Sanner, said: "Argumentative and inferential averments are, it is true, as obnoxious to good pleading as are conclusions of law, but their value is not the same. Conclusions of law, unsupported by the essential averments of fact, are always ineffective; but, as against an attack for lack of substance, the allegations of a pleading are to be liberally construed, with a view to substantial justice between the parties

(Rev. Codes, sec. 6566), and whatever is necessarily implied in, or is reasonably to be inferred from, an allegation is to be taken as directly averred (*County of Silver Bow* v. *Davies,* 40 Mont. 418, 107 Pac. 81). Where the inferential allegations of a pleading are not attacked by special demurrer or motion, as may be appropriate, we know of no modern authority which denies the right of the pleader to make proof under them.''

The pleading is objectionable for lack of definiteness and certainty, and a special demurrer or appropriate motion seasonably interposed raising that question would no doubt have been sustained. As against an attack for lack of substance, the complaint states a cause of action, and defendant's objections to it were properly overruled.

Defendant further insists that his motion for a directed verdict should have been granted. He contends that the evidence adduced, taken as a whole, shows conclusively as a matter of law that the plaintiff not only knew of the alleged defect or dangerous condition, but that he also fully appreciated the danger, and, after acquiring such knowledge and with such appreciation of the danger, he voluntarily continued in the alleged dangerous situation whereby he was injured, and that he thereby assumed the risk; that he was not relieved from such assumption of the risk by the statements made to him by Boner, the engineer.

Keeping in mind the well-established rule that upon a motion for a directed verdict the court must deem every fact proved which the evidence adduced tends to prove, and that a case should not be withdrawn from the jury unless it follows as a matter of law that recovery cannot be had upon any view of the evidence, including legitimate inferences to be drawn from it (*Koerner* v. *Northern Pac. R. Co.,* 56 Mont. 511, 186 Pac. 337), and also remembering the presumption of law that a person exercises ordinary care for his own safety (sec. 10606, Rev. Codes 1921), let us examine the record to determine whether it shows that plaintiff as a matter of law assumed the risk.

Several questions are involved: (a) Did the plaintiff know of the defective condition? (b) Knowing the defective condition, did he actually appreciate the danger, or should he, acting as a reasonable person, have appreciated the danger? If (a) and (b) are answered in the affirmative, then (c) was he justified in continuing to work in the dangerous situation under the promise of Harrison Boner, the engineer, to repair the defect and his assurance that there was no danger? In other words, if plaintiff was induced to continue working in the dangerous situation by the statements and promises of Boner, did this absolve him from the legal liability of assuming the risk? The answer to question (c) will depend upon the result of one further inquiry, and that is: (d) In the act of making these statements and promises, did Harrison Boner bear the relation of vice-principal to plaintiff, or was he a fellow-servant? In the solution of (d) several questions are involved. Was Boner created a vice-principal by direct authorization of defendant? If not, did the position in which defendant permitted plaintiff and Boner to be placed, the character and magnitude of the work and the duties inherently devolving upon each, and the very nature and necessity of the situation created by defendant make Boner plaintiff's vice-principal in the act of making the statements and promises upon which plaintiff relied?

A servant by the act of entering the service of his master [5] assumes all the usual and ordinary risks attendant upon his employment, not including risks arising from the negligence of the master, and he assumes the latter as well if he knows of the defects from which they arise and appreciates the dangers which flow from such defects. (Sec. 7758, Rev. Codes 1921; *Fotheringill* v. *Washoe Copper Co.*, 43 Mont. 485, 117 Pac. 86.) Here it will be noted that there are two elements, to-wit, knowledge of the defect and that which is of equal importance, an appreciation of the risk resulting therefrom.

Plaintiff, of course, admits that he discovered the particular defect which caused the injury before the accident, but he insists that he was ignorant and inexperienced, and there-

fore did not realize or appreciate the danger of continuing to work after the discovery, and that therefore defendant is liable for failing to provide him a safe place to work and in failing to warn him. This contention cannot be sustained. His statements that, when they got on rough and stony ground, the platform would not go steady, but worked up and down, and that he asked Boner to fix it, show that he did realize and appreciate that there was danger. What had previously caused the platform to raise up? It requires only ordinary intelligence to realize that in plowing among stones they will roll, and that a stone or anything else rolling beneath a loose platform may raise it up. When plaintiff testified that he relied upon Boner's assurance that he would repair the platform, and that there was no danger, it was no hasty or inadvertent statement upon his part. The record shows that after plaintiff's direct examination had closed and a recess had been taken his counsel asked for and was given permission to recall plaintiff to the stand to testify to this single point, and a fair interpretation of the record seems to show that one theory upon which the case was tried was grounded upon a promise to repair after discovery that the defect was dangerous, and thus relieving plaintiff of assuming the risk by continuing in the employment thereafter. If he thought the matter over and then asked for, received and relied upon assurances of repair which induced him to continue in an employment which he might otherwise have abandoned, he, of course, appreciated that there was danger. Actual knowledge of the risk is not necessary in order that he assume it. If the circumstances are such that a reasonably prudent man ought to have known of the danger, he will be charged with the knowledge. (*Molt* v. *Northern Pac. R. Co.,* 44 Mont. 471, 120 Pac. 809.)

In the case of an adult servant of sound mind, where the [6] dangers of the employment are visible, so that a man of ordinary intelligence, though not an expert, could not fail to see and comprehend them, an employer is under no obligation to warn the servant of their existence. (Thompson on

Negligence, sec. 4061; *Masich* v. *American Smelting Co.,* 44 Mont. 36, 118 Pac. 764.)

In *Sorenson* v. *Northern Pac. Ry. Co.,* 53 Mont. 268, 163 Pac. 500, this court, speaking through Mr. Chief Justice Brantly, said: "It is true that actual ignorance of the particular risk will not relieve the servant; that his ignorance must be excusable; that he is bound to use his senses, and cannot allege ignorance of a hazard which is obvious to any one of ordinary intelligence and understanding; and that, though he does not appreciate the extent of the hazard or does.not know precisely the injury he may incur, the risk is his. (Bailey on Personal Injuries, 2d ed., sec. 376.)"

In 3 Labatt's Master and Servant, section 1209, it is said: "On general principles, it is plain that, where there can be no reasonable doubt that a person in the servant's position, who knew of the defect in question, must also have understood the resulting risk, it may be ruled as a matter of law that, for the purpose of the defense, his information was complete."

But, conceding that plaintiff did know of the defective [7] condition and appreciated the danger, if he was assured by the defendant that the defect would be repaired, plaintiff could continue in the employment for a reasonable length of time thereafter without assuming the risk, unless the danger was so great that a reasonably prudent man would not have continued at work. (3 Labatt's Master and Servant, sec. 1197.)

So, likewise, the rule seems to be settled that a servant can rely upon his employer's direction to do an act as being safe unless the danger is so apparent that one of ordinary prudence would observe it and would refuse obedience. (*Cox* v. *Wilkeson Coal & Coke Co.,* 61 Wash. 343, 112 Pac. 231.)

In so far as giving notice of the defect to Barrick as foreman [8] the alleged statement of Boner that he told the foreman to get bolts is hearsay, which was erroneously admitted over defendant's objection. So that there is nothing properly in the record to show that either defendant, Nihill or Barrick,

his foreman, ever knew of the defect, except plaintiff's statement that Barrick "had some bolts" on the morning of the accident, and there is no showing that either Nihill or Barrick made any promise that it would be repaired. The only promise was that made by Boner, the engineer. Were the statements of Boner imputable to the defendant, Nihill, so as to make him legally responsible to plaintiff for them? In other words, was Boner's promise to repair in legal effect the promise of the defendant? The solution of this problem depends upon the answer to question (d) above, as to whether Boner was a vice-principal in his relations to plaintiff or a fellow-servant.

Whether one acts as a fellow-servant or as a representative [9] of the master under a given state of facts is a question of law for the court. (*Yates* v. *McCullough Iron Co.*, 69 Md. 370, 16 Atl. 280; *Donnelly* v. *San Francisco Bridge Co.*, 117 Cal. 417, 49 Pac. 559; *Callan* v. *Bull*, 113 Cal. 593, 45 Pac. 1017.)

Plaintiff earnestly contends that Boner was defendant's [10] vice-principal, and in that connection he lays much stress on the fact that Barrick, the foreman, had placed Boner in authority over plaintiff. But this is not the true test. Superior position or authority alone does not necessarily make him a vice-principal. In determining who is a vice-principal, the question is whether the person whose status is in controversy has been intrusted with, and authorized to perform, any nondelegable duty required of the master. The master's liability in cases of vice-principalship does not depend upon who performs the duty, but upon the character of the act done or services performed, and the existence of the duty itself, there being certain duties which he cannot delegate to a fellow-servant, and absolve himself from liability for their nonperformance. It is not a question of grade or rank, and the employee's place or grade of service is not material.

Whenever a master delegates to any officer, servant, agent or employee, high or low, the performance of any duty which really devolves upon the master himself, then such officer,

servant, agent or employee stands in the place of the master and becomes a substitute for the master, or, in other words, a vice-principal, and the master is liable for his acts or his negligence to the same extent as though the master himself had performed the acts or was guilty of the negligence. These nondelegable duties are, among others, that of exercising reasonable care to provide the servant with a safe place to work, reasonably safe implements and materials to work with, and with reasonably competent fellow-servants. This was the rule laid down in *Atchison, Topeka & Santa Fe R. Co.* v. *Moore,* 29 Kan. 632. The same principle was announced in *Baltimore & O. R. Co.* v. *Baugh,* 149 U. S. 368, 37 L. Ed. 772, 13 Sup. Ct. Rep. 914 [see, also, Rose's U. S. Notes], and has been adopted as the rule of law in this state in *Goodwell* v. *Montana C. Ry. Co.,* 18 Mont. 293, 45 Pac. 210, *Gregory* v. *Chicago, M. & St. P. R. Co.,* 42 Mont. 551, 113 Pac. 1123, *McAllister* v. *Rocky Fork Coal Co.,* 45 Mont. 433, 123 Pac. 696, and *Morelli* v. *Twohy Bros. Co.,* 54 Mont. 366, 170 Pac. 757.

Plainly, then, Boner was performing a nondelegable act, *i. e.,* the act of a vice-principal when he promised to get bolts and repair the defect and assured plaintiff there was no danger, since his act involved that of providing plaintiff a safe place to work.

The remaining question to be answered, then, is as to whether [11] defendant either directly authorized Boner to be his vice-principal in doing the acts in question, or, in the absence of direct authorization, defendant created a situation where authority was implied or the exigencies of the occasion devolved upon Boner the duties and authority of a vice-principal.

The record shows without contradiction that Barrick had no authority from defendant to make Boner his subforeman and place him in command over plaintiff or to delegate to him the sole duty of repairing. And from a careful review of the whole record we are unable to find where the general situation, the nature and magnitude of the work, required one of the two servants to be superior to the other, or that, under the

particular circumstances of this case, the sole duty of repair-
ing necessarily devolved upon one of them to the exclusion of
the other. So far as the record shows, both plaintiff and
Boner were men of ordinary intelligence. It does not appear
that plaintiff was too ignorant or was forbidden to make the
repairs if he had had bolts. No reason appears why plaintiff
himself could not have asked the foreman to bring bolts in-
stead of telling Boner. Barrick was present half an hour
or so before the accident, and plaintiff said nothing to him
about bolts. Plaintiff was at that instant working on the
plow changing plowshares, and thus taking out and putting
in bolts. The task of putting bolts in the platform could
not have been very different from that of putting bolts in the
plows. In order to prove a cause of action, plaintiff contends
that, although plaintiff greased, ran, and operated the plows
and removed the bolts from the points, the general situation
created by defendant, the nature and magnitude of the work,
caused the duty of fixing the platform to thereby devolve solely
upon Boner. This contention cannot be sustained.

The record, taken as a whole, discloses that plaintiff and
Boner were fellow-servants. Being a fellow-servant Boner
did not represent defendant when he promised repairs and
assured plaintiff there was no danger. Plaintiff assumed the
risk, and the motion for a directed verdict should have been
sustained.

We therefore recommend that the judgment and order be
reversed, with directions to dismiss the complaint.

Per Curiam: For the reasons given in the foregoing opinion,
the judgment and order appealed from are reversed and the
cause is remanded, with directions to dismiss the complaint.

*Reversed.*

Rehearing denied November 22, 1922.